874 N.E.2d 644 (2007)
In re the Matter of the ANNEXATION PROPOSED BY ORDINANCE NO.XXXX-XX-XX, as Amended Being an Ordinance Annexing Certain Real Estate to the City of Crown Point Commonly Known as Liberty Park, Abandoned Railroad, and American Legion
The City of Crown Point, Indiana, Appellant-Defendant,
v.
Chris Fetcko and Certain Other Annexation Area Landowners too Numerous to List, Appellees-Remonstrators.
No. 45A03-0611-CV-549.
Court of Appeals of Indiana.
October 12, 2007.
Patrick A. Schuster, Crown Point, IN, Attorney for Appellant.
Nick Katich, Stephanie Shappell Katich, Katich & Shappell Legal Team, LLP, Crown Point, IN, Attorney for Appellees.

OPINION
CRONE, Judge.

Case Summary
The City of Crown Point ("the City") appeals the trial court's order granting the motion for involuntary dismissal filed by Chris Fetcko and other landowners ("the Remonstrators") as to a City ordinance annexing certain real estate. We reverse and remand.

*645 Issue
The issue is whether the City's fiscal plan for the annexation is sufficiently specific regarding funding sources to satisfy the requirements of Indiana Code Section 36-4-3-13(d)(2).

Facts and Procedural History
The relevant facts are undisputed. On December 6, 2004, the City adopted a fiscal plan for annexing real state commonly known as Liberty Park, Abandoned Railroad, and American Legion. On April 4, 2005, the City adopted an ordinance annexing Liberty Park. On July 1, 2005, the Remonstrators filed a petition against the annexation. On May 15, 2006, the trial court held a hearing on the petition. The Remonstrators moved for involuntary dismissal pursuant to Indiana Trial Rule 41(B),[1] claiming that the City's fiscal plan did not satisfy the requirements of Indiana Code Section 36-4-3-13(d)(2), which states that a fiscal plan must show "[t]he method or methods of financing the planned services [to be furnished to the territory to be annexed]. The plan must explain how specific and detailed expenses will be funded and must indicate the taxes, grants, and other funding to be used."
On October 30, 2006, the trial court issued an order containing the following findings:
5. The Remonstrators claim that the City's case-in-chief failed to present evidence that established that it had developed and adopted a written fiscal plan which satisfied the requirements of I.C. XX-X-X-XX(d)(2). Specifically, the Remonstrators contend that "the City's fiscal plan showed a deficit (i.e. the cost of extending services to Liberty Park exceeded the revenues which would result from the annexation) and that the fiscal plan did not explain how the deficit would be funded."[2]
. . . .
7. The City presented evidence regarding its fiscal plan that established that certain capital and non-capital services would be extended to the annexed land. The City's plan indicated that there would be a five-year cumulative deficit in which the expense of providing the services would exceed the additional revenue which would result from the annexation, including property taxes, by a sum of $111,322.00. The City also indicated in its fiscal plan that payment for the planned services addressed in its fiscal plan will be financed ". . . from the General Fund supported by the City's tax levy.["]

*646 8. I.C. XX-X-X-XX(d)(2) requires that the City's fiscal plan must ". . . explain how specific and detailed expenses will be funded and must indicate the taxes, grants, and other funding to be used." The City's statement that payment for the services will be financed "from the General Fund supported by the City's tax levy" is vague and does not "explain how specific and detailed expenses will be funded." Indeed, in articulating the rationale for the requirement of a written fiscal plan, our Supreme Court emphasized that, ". . . more than vague promises are needed for a court to test a city's ability to provide like services to the annexed territory."
9. The City's written fiscal plan does not satisfy the requirements of I.C. XX-X-X-XX(b)(2) [sic[3]]. Accordingly, the Remonstrators' motion for involuntary dismissal filed pursuant to T.R. 41(B) should be granted, because based upon the weight of the evidence and the law, the City has failed to show annexation is appropriate under the law.
JUDGMENT
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court as follows:
1. The motion for involuntary dismissal filed by the Remonstrators in this case pursuant to T.R. 41(B) is granted.
2. The remonstrance is granted, and the annexation proposed by the Defendant, THE CITY OF CROWN POINT, INDIANA, [as amended], . . . is denied.
Appellant's App. at 7-8 (citation and footnotes omitted). The City now appeals.

Discussion and Decision
The City argues that the trial court interpreted Indiana Code Section 36-4-3-13(d)(2) "in a manner which would require an annexing municipality to include information in its fiscal plan beyond the scope required by the legislature in its statute." Appellant's Br. at 4. In reviewing the City's argument, we are mindful of the following considerations:
Annexation is subject to judicial review only so far as the General Assembly has authorized it by statute, and "[t]he larger object of the annexation statute is, as it has always been, to permit annexation of adjacent urban territory." Our review of the trial court's special findings is limited to reviewing the sufficiency of the evidence for issues of fact, and then looking to the record for evidence favorable to judgment. We do not set aside findings or judgments unless they are clearly erroneous, but we review questions of law de novo.

City of Carmel, IN v. Certain Southwest Clay Township Annexation Terr. Landowners, 868 N.E.2d 793, 797 (Ind.2007) (citations omitted).
In City of Carmel, "[t]he trial court concluded that Carmel's original fiscal plan failed to meet the requirements of subsection (d)(2). It criticized the plan for not providing the funding methods for services from each of Carmel's city departments or more specific estimates of expenses." 868 N.E.2d at 799. Our supreme court disagreed with the trial court's determination:
This conclusion is not supported by the evidence. The plan's fiscal projections contain both a breakdown of expenditures by department and a description of which city funds will be used to pay for the overall package of services. The *647 projections show the various forms of revenue expected to be collected in connection with the proposed annexation. They net out expenses and revenue to show the overall impact, demonstrating that revenue from the annexation territory will be a significant source of funding for services to the territory.
Carmel's revised ordinance and fiscal plan satisfy the general purposes assigned to them under the Code. As for giving notice so that those affected can make a decision about their interests, the landowners stand before us in this proceeding as living proof that the first purpose has been fulfilled. As to the second, Carmel's fiscal [plan] explains in considerable detail its strategy for providing services to southwest Clay (detail sufficiently minute that counsel understandably complain about some of the print size). The level of detail is both ample for judicial review and sufficient to test the future fulfillment of the pledge of service. To mention a few examples, Carmel plans to hire at least six new police officers (at $90,000 each), at least four new communications center employees ($48,000 each), and one new city court employee ($65,000-$70,000), and the City will provide "a combination of tandem axle trucks, single axle trucks, pick ups and street sweepers" for road maintenance ($780,000). The three landowners do not contest the accuracy of any of these calculations on appeal, nor do they contend that the services contemplated are less than those provided the present city residents. By contrast, at the end of the day those who led the remonstrance, backed up by a majority vote, told the court that they regarded the plan as a credible commitment.
The general question is whether services similar to those offered in the existing city will be provided and whether the annexing municipality will be able to finance them. The trial court noted that "Carmel did demonstrate the general financial wherewithal to pay for the SW Clay annexation." In light of the failure of the landowners to contest the adequacy of the services planned and the trial court's finding that the city's finances were sufficient to carry them out, the trial court's judgment that the plan did not meet the requirements of subsection 13(d) was clear error.
Id. at 799-800 (footnotes and citations omitted).
Returning to the facts of this case, the Remonstrators specifically objected to the City's fiscal plan on two grounds: (1) it showed that the cost of extending services to Liberty Park would exceed the revenues resulting from the annexation; and (2) it did not explain how the deficit would be funded. The first objection has nothing to do with the sufficiency of the plan pursuant to Indiana Code Section 36-4-3-13(d)(2). As for the second objection, the plan does explain how the deficit will be funded, namely, by the City's general fund, supported by the City's tax levy. Like the fiscal plan in City of Carmel, the City's plan "demonstrat[es] that revenue from the annexation territory will be a significant source of funding for services to the territory[,]" id. at 799, and that only a small portion, i.e., the deficit, will be covered by the general fund.[4] The Remonstrators *648 did not specifically allege below  at least in the record before us on appeal[5]  and the trial court did not specifically find that the City failed to demonstrate that it has the "general financial wherewithal" to meet this obligation. Id. Following our supreme court's guidance in City of Carmel, we conclude that the plan is sufficiently specific regarding funding sources to satisfy the requirements of Indiana Code Section 36-4-3-13(d)(2) and that the trial court's conclusion to the contrary is clearly erroneous. Therefore, we reverse and remand for further proceedings to determine whether the conditions enumerated in Indiana Code Section 36-4-3-13(e)(2) exist.[6]
Reversed and remanded.
BAKER, C.J., and FRIEDLANDER, J., concur.
*649 This Page Contains Footnotes.
NOTES
[1] See Ind. Trial Rule 41(B) ("After the plaintiff or party with the burden of proof upon an issue, in an action tried by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the weight of the evidence and the law there has been shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff or party with the burden of proof, the court, when requested at the time of the motion by either party shall make findings if, and as required by Rule 52(A). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision or subdivision (E) of this rule and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, operates as an adjudication upon the merits.").
[2] We note that the City did not include a copy of the Remonstrators' petition in its appellant's appendix and that the Remonstrators did not file an appellee's appendix. As such, we must rely on the trial court's order for the specific objections raised in the Remonstrators' petition.
[3] We agree with the City that this is a scrivener's error and that the trial court clearly intended to refer to subsection (d)(2) of the statute.
[4] The plan indicates that the City would receive $108,682 in property tax revenues and $28,334 in miscellaneous form two and road revenues each year from the annexed area, for a five-year total of $685,080. Appellant's App. at 32 (Table 4). The plan also indicates that over five years, the City would incur $661,402 in non-capital costs and $135,000 in capital costs, for a total of $796,402, thus leaving a projected deficit of $111,322, or only fourteen percent of the total costs, to be covered by the City's general fund. Id. at 35 (Table 7). Even if the actual deficit would be $211,242, as the Remonstrators claim, there is no indication that the general fund (the total budget for which was over ten million dollars in 2004) would be unable to cover that shortfall over a five-year period. See Remonstrators' Exh. 1 (2004 budget).
[5] As mentioned in footnote 2, supra, the Remonstrators' petition does not appear in the record before us. The only remonstrance hearing testimony provided to us is that of Gregory Guerrettaz, a certified public accountant who prepared the City's fiscal plan.
[6] Indiana Code Section 36-4-3-13(e) provides,

At the hearing [on a remonstrance petition] under section 12 of this chapter, the court shall do the following:
(1) Consider evidence on the conditions listed in subdivision (2).
(2) Order a proposed annexation not to take place if the court finds that all of the conditions set forth in clauses (A) through (D) and, if applicable, clause (E) exist in the territory proposed to be annexed:
(A) The following services are adequately furnished by a provider other than the municipality seeking the annexation:
(i) Police and fire protection.
(ii) Street and road maintenance.
(B) The annexation will have a significant financial impact on the residents or owners of land.
(C) The annexation is not in the best interests of the owners of land in the territory proposed to be annexed as set forth in subsection (f).
(D) One (1) of the following opposes the annexation:
(i) At least sixty-five percent (65%) of the owners of land in the territory proposed to be annexed.
(ii) The owners of more than seventy-five percent (75%) in assessed valuation of the land in the territory proposed to be annexed.
Evidence of opposition may be expressed by any owner of land in the territory proposed to be annexed.
(E) This clause applies only to an annexation in which eighty percent (80%) of the boundary of the territory proposed to be annexed is contiguous to the municipality and the territory consists of not more than one hundred (100) parcels. At least seventy-five percent (75%) of the owners of land in the territory proposed to be annexed oppose the annexation as determined under section 11(b) of this chapter.
Indiana Code Section 36-4-3-13(f) provides,
The municipality under subsection (e)(2)(C) bears the burden of proving that the annexation is in the best interests of the owners of land in the territory proposed to be annexed. In determining this issue, the court may consider whether the municipality has extended sewer or water services to the entire territory to be annexed:
(1) within the three (3) years preceding the date of the introduction of the annexation ordinance; or
(2) under a contract in lieu of annexation entered into under IC XX-X-X-XX.
The court may not consider the provision of water services as a result of an order by the Indiana utility regulatory commission to constitute the provision of water services to the territory to be annexed.