# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**STEPHEN R. BUSCHMANN**
Thrasher Buschmann & Voelkel, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**BRIAN J. ZAIGER**
**MATTHEW R. STRZYNSKI**
Krieg DeVault, LLP
Carmel, Indiana

FILED

Oct 12 2012, 8:48 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| CERTAIN WESTFIELD SOUTHEAST AREA 1 ANNEXATION TERRITORY LANDOWNERS and CERTAIN WESTFIELD SOUTHEAST AREA 2 TERRITORY LANDOWNERS, | ) ) ) ) ) ) |
| Appellants-Plaintiffs, | ) ) |
| vs. | ) No. 29A02-1205-MI-389 ) |
| CITY OF WESTFIELD, | ) ) |
| Appellee-Defendant. | ) |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable William J. Hughes, Judge
Cause No. 29D03-0903-MI-272 & 29D03-0903-MI-273

**October 12, 2012**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellants-Petitioners, Certain Westfield Southeast Area 1 and Area 2 Annexation Territory Landowners (Remonstrators), appeal the trial court's judgment in favor of Appellee-Respondent, the City of Westfield (the City).

We affirm.

## ISSUES

Remonstrators raise one issue on appeal, which we restate as: Whether the trial court erred when it determined that the City's delayed publication of annexation ordinances did not bar annexation.

On cross-appeal, the City raises one issue, which we restate as: Whether the trial court erred when it determined that Remonstrators had standing to challenge the City's annexation.

## FACTS AND PROCEDURAL HISTORY

On September 24, 2008, the City passed Ordinance Nos. 08-18 and 08-19 annexing certain parcels of land located in Washington Township, Hamilton County, Indiana (the Annexed Territories). Ordinance No. 08-18 annexed 23 land parcels with a total area of 76 acres located between State Route 32 and South Street/171st Street and which, in the aggregate, were 100% contiguous with the City's boundaries (Southeast Area No. 1). Ordinance No. 08-19 annexed four land parcels with a total area of 23 acres adjacent to State Route 32 and which, in the aggregate, were 99.6% contiguous with the

2

City's boundaries (Southeast Area No. 2). The 2011 total assessed valuation of Southeast Area No. 1 was $3,315,200 and the 2011 total assessed valuation of Southeast Area No. 2 was $1,273,900. On September 26, 2008, the Mayor for the City, J. Andrew Cook (Mayor Cook), approved and signed both Ordinances. That same day, fiscal plans for serving the areas were approved. On December 6, 2008, 71 days following Mayor Cook's approval signature, the Ordinances were published in The Noblesville Times, a local newspaper.

On March 9, 2009, the Remonstrators filed petitions remonstrating against the proposed annexation of Southeast Areas No. 1 and 2. The petitions alleged that providers other than the City adequately furnished police and fire protection as well as street and road maintenance. The annexations were alleged not to be in the best interests of landowners within the Annexed Territories and would also have a significant financial impact upon such landowners. Further, the petitions alleged that publication of the Ordinances occurred more than 30 days following their passage.

On August 3, 2009, the trial court reviewed each petition. That same day, it certified the sufficiency of remonstrance for Southeast Area No. 1 but denied certification for Southeast Area No. 2. On September 1, 2009, following a hearing, the trial court certified the sufficiency of Southeast Area No. 2. The trial court subsequently consolidated both cases for an evidentiary hearing.

On June 4, 2010, the Remonstrators filed for summary judgment contending that the City's failure to publish the Ordinances within the time frame specified in Ind. Code §

3

36-4-3-7(a) rendered the Ordinances void. On November 5, 2010, the trial court held a hearing on the motion and denied it on December 2, 2010, concluding that the City's delayed publication of the Ordinances did not substantially impair the Remonstrators' rights. On December 16, 2010, Remonstrators requested certification to pursue an interlocutory appeal, which the trial court granted on December 21, 2010. On March 4, 2011, this court denied the Remonstrators' interlocutory appeal.

On February 28, 2012, a bench trial was held. On April 16, 2012, the trial court issued its Findings, Conclusions of Law and Judgment in favor of the City and ordered the annexation to take place.

Remonstrators now appeal. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

CROSS-APPEAL

Because the City presents us with a threshold procedural issue on cross-appeal, we will first address the City's contention. On cross-appeal, the City challenges the Remonstrators' standing to oppose annexation. In particular, the City contends that, at an annexation evidentiary hearing, the Remonstrators failed to establish that 75% of landowners in the Annexed Territories opposed annexation. Remonstrators respond that 1) the City waived the issue by failing to raise it prior to appeal, and 2) the City has confused the requirements for proof at an evidentiary hearing with those to determine standing in an annexation proceeding.

4

Whether a party has standing is a question purely of law. *Madison Cnty. Bd. of Comm'rs v. Town of Ingalls*, 905 N.E. 1022, 1025 (Ind. Ct. App. 2009), *trans. denied*. To resolve whether the Remonstrators have standing, we briefly review the statutory scheme for challenging proposed annexations. I.C. § 36-4-3-11(a) provides the procedural prerequisites for the trial court's exercise of subject matter jurisdiction over remonstrance proceedings. *In re Petition to Annex Approximately 7,806 Acres of Real Estate into the City of Jeffersonville*, 891 N.E.2d 1157, 1161 (Ind. Ct. App. 2008), *trans. denied*. Property owners affected by a proposed annexation by a municipality may challenge it through a written remonstrance petition filed with the circuit or superior court in the relevant county. I.C. § 36-4-3-11(a). In general, the petition must be signed by (1) at least 65% of land owners by parcel in the annexed territory or (2) by owners of more than 75% in assessed valuation of land in the annexed territory. *Id*. However, for those territories, which do not exceed 100 parcels of land and of which 80% of their boundaries are contiguous to the annexing municipality, 75% of the landowners must sign the petition. I.C. § 36-4-3-11(e). The petition must be filed within 90 days following publication of the annexation ordinance and remonstrators must attach a copy of the ordinance as well as allege why the annexation should not occur. I.C. § 36-4-3-11(a). Thereafter, the trial court must certify that the petition contains sufficient signatures, *i.e.*, confirming that those landowners signing the petition meet the requirements of I.C. § 36-4-3-11(a) or (e). *See* I.C. § 36-4-3-11(b).

5

Upon finding that the remonstrance is sufficient, the trial court sets an evidentiary hearing on the remonstrance within 60 days of the certification pursuant to I.C. § 36-4-3-11(c). *Town of Georgetown v. Edwards Community, Inc.*, 885 N.E.2d 722, 725 (Ind. Ct. App. 2008). I.C. § 36-4-3-12 governs the evidentiary hearing and provides that the trial court hears the remonstrance petition without a jury and must enter judgment according to the evidence introduced by the parties. *Annexation Ordinance F-2008-15 v. City of Evansville*, 955 N.E.2d 769, 775 (Ind. Ct. App. 2011). The municipality bears the burden of establishing annexation at the hearing. *City of Carmel v. Certain Southwest Clay Township Annexation Territory Landowners*, 868 N.E.2d 793, 797 (Ind. 2007).

I.C. § 36-4-3-13 lists the prerequisites for annexation. *City of Carmel*, 868 N.E.2d at 797. The trial court must order annexation if the municipality establishes either: (a) the annexed territory is contiguous to the municipality and certain conditions pertaining to zoning, population density or subdivision are fulfilled; or, (b) at least one-fourth of the annexation territory's aggregate external boundaries coincide with that of the municipality. I.C. § 36-4-3-13(b) – (c). Under I.C. § 36-4-3-13(d), the municipality must also show that it has developed and adopted a written fiscal plan and definite policy showing cost estimates, financing methods, as well as plans for organization and extension of service that demonstrate planned services of a noncapital and capital improvement nature will be provided within certain time frames. S*ee City of Carmel*, 868 N.E.2d at 798. On the other hand, remonstrators can prevent annexation if they establish all the grounds listed in I.C. § 36-4-3-13(e) at the evidentiary hearing. *See id*. at

6

800. Those grounds are that (1) police, fire, street and road maintenance are adequately furnished by a provider other than the annexing municipality; (2) the annexation will have a significant financial impact on the residents or landowners; (3) the annexation is not in the best interest of landowners, which may include a consideration of the extent to which the municipality has extended water and sewer services. *See* I.C. § 36-4-3-13(e); -(f). Finally, remonstrators must show that 65% of landowners or those landowners of 75% of the assessed valuation oppose annexation; however, where the territories to be annexed do not exceed 100 parcels of land and have 80% of their boundaries contiguous to the annexing municipality, 75% of the landowners must oppose annexation. I.C. § 36-4-3-13(e)(2)(D) – (E).

Here, the trial court certified the remonstrance petitions for the Annexed Territories on the grounds that each petition contained the signatures of the owners of 75% of the assessed valuation of the land in the annexed territories and at trial concluded that the same number of landowners continued to oppose annexation. *See* I.C. §§ 36-4-3-11(a)(2); -13(e)(2)(D)(ii). However, the City made no objection to whether Remonstrators met the threshold during the certification proceedings or at the evidentiary hearing. The issue of standing cannot be raised for the first time on appeal and the City has therefore waived the issue. *See Burcham v. Metropolitan Bd. of Zoning Appeals*, 883 N.E.2d 204, 210 (Ind. Ct. App. 2008).

Waiver notwithstanding, we agree with the Remonstrators that the City has conflated the requirements for a remonstrance petition with those at a remonstrance

7

hearing. As is apparent from the statutory framework set forth above, standing is established at the trial court's certification of the remonstration petition.

Remonstrators cite the supreme court's opinion in *City of Carmel* to argue that "once the trial court has certified the sufficiency of the petitions, standing is resolved under I.C. § 36-4-3-11 and the matter proceeds to trial under the requirements of I.C. § 36-4-3-13." (Reply Br. p. 2). In *City of Carmel*, the trial court certified the remonstrance by landowners in southwest Clay Township who had met the 65% land ownership threshold in I.C. § 36-4-3-11(a)(1). *City of Carmel*, 868 N.E.2d at 795. In the interim, an organization representing the land owners negotiated for additional services with the City of Carmel, which negotiations were approved following a public referendum on the eventual settlement obtained with the City of Carmel. *Id*. At trial, the number of "certified remonstrators" were shown to have decreased to below 65% in light of the number of landowners voting in favor of the referendum. *Id*. at 801. As a result, the supreme court found that the remonstrators had not satisfied the requirements of I.C. § 36-4-3-11(e)(2)(D)(i), which requires that "65% of the landowners oppose the annexation." *Id*. at 800. In particular, the supreme court noted:

> [t]he appropriate consideration should have been whether 65% of the landowners *continued to oppose* the annexation. [I.C. § 36-4-3-13(e)(2)(D)] complements the rest of the statutory arrangement only if understood as a testing of landowner sentiment after the rest of the process has run its course.

*Id*. at 800 (emphasis added). Thus, the supreme court encountered a situation in which standing existed prior to the evidentiary hearing and had been certified as such; however,

8

when the number of land owners in favor of opposing annexation had been established at the evidentiary hearing to have decreased, the supreme court concluded that the remonstrators had not met the statutory requirements to defeat annexation.

This distinction leads us to conclude that the issue of standing is resolved by the trial court's certification of the remonstrators' petition. Once certified, whether the required number of remonstrators "continued to oppose the annexation" is simply a matter to be proved at the evidentiary hearing. Accordingly, we conclude that the Remonstrators do have standing to challenge the City's annexation as evidenced by the trial court's certification of the remonstrance petition prior to the evidentiary hearing. [1]

APPEAL

### I. *Standard of Review*

Turning to the merits of the Remonstrators' appeal, we note that the General Assembly has delegated part of its power to re-establish and change governmental unit boundaries to local legislatures, making annexation an essentially legislative function. *See City of Evansville*, 955 N.E.2d at 774. Thus, "[a]nnexation is subject to judicial review only so far as the General Assembly has authorized it by statute." *City of Carmel*, 868 N.E.2d at 797. We afford legislative judgment considerable deference on appeal and avoid scrutinizing legislative processes, even those that are constitutionally mandated. *City of Evansville*, 955 N.E.2d at 774. We do not abandon this deferential approach

---

[1] The parties do not contest, and we do not address, whether the trial court certified the remonstrance provisions in spite of I.C. § 36-4-3-11(e).

9

simply because the state legislature has delegated a legislative function to subordinate agents, the municipalities. *Id.*

Once the trial court has decided whether to approve an annexation ordinance, either the municipality or the remonstrators may appeal. *Id.* Where, as here, the trial court enters special findings, we review issues of fact for sufficiency of the evidence and look to the record only for evidence favorable to the judgment. *Id.* We do not set aside findings and judgments unless they are clearly erroneous. *Id.* We review questions of law *de novo*. *Id.*

## II. *Publication*

On appeal, Remonstrators' sole basis for challenging the trial court's order of annexation is the City's belated publication of the Ordinances. Pursuant to I.C. §§ 36-4-3-3; -4(a)(1), the legislative body of a municipality may, by an ordinance defining the corporate boundaries of the municipality, annex territory that is contiguous to the municipality. *City of Evansville*, 955 N.E.2d at 774. After an ordinance proposing annexation has been adopted, I.C. § 36-4-3-7(a) requires the ordinance to be published in accordance with procedures set forth in I.C. chapter 5-3-1, which in turn require publication in a newspaper or qualified publication that is published in the municipality as well as publication on the newspaper or qualified publication's website. *City of Evansville*, 955 N.E.2d at 775. I.C. § 5-3-2-1(h) provides that if publication of an ordinance is required, notice of the passage "shall be published within 30 days after passage." Property owners of the parcels included in the proposed annexation may then

10

challenge the proposed annexation by filing a remonstrance within 90 days. I.C. §§ 36-4-3-7(a); -11(a).

In ordering annexation, the Remonstrators argue that the trial court erred by failing to give effect to the publication requirement. The City passed the Ordinances on September 26, 2008. Under I.C. §§ 36-4-3-7(a) and 5-3-1-2(h), the City was required to publish notice of passage by October 26, 2008. However, the City admittedly did not publish notice of passage until December 6, 2008. Seizing upon this procedural defect, Remonstrators argue that by failing to adhere to the statutory publication requirements, the Ordinances and therefore the City's annexation is void. We disagree.

While the municipality must demonstrate compliance with the annexation statutes at the evidentiary hearing, once the provisions of I.C. §§ 36-4-3-11 to -16 are satisfied, the trial court must order annexation. *Bradley v. City of New Castle*, 764 N.E.2d 212, 215 (Ind. 2002). Thus, technical or procedural wrongs by the municipality during the annexation process that arise out of statutes other than I.C. §§ 36-4-3-11 through -13, require a showing by the Remonstrators that their substantive or procedural due process rights have been violated. *City of Kokomo ex rel. Goodnight v. Pogue*, 940 N.E.2d 833, 837 (Ind. Ct. App. 2010). A mere failure to follow applicable rules or procedures to the letter does not, without more, amount to such a violation. *Id.*

Here, the Remonstrators claim only that the City failed to comply with I.C. § 36-4-3-7(a) and I.C. § 5-3-2-1(b). However, these statutes do not specifically address the remonstrance procedures in I.C. §§ 36-4-3-11 and -13, but only the passage and

11

publication of annexation ordinances. *See id*. As such, the Remonstrators must do more than prove the City's failure to comply with the statute; they must establish that the City committed a procedural wrong "so severe that courts must act to protect remonstrators' substantial rights." *Bradley*, 764 N.E.2d at 217. The Remonstrators have not met this burden.

Remonstrators argue that the City's belated publication of the Ordinances affected their substantial rights insofar as I.C. § 36-4-3-7(a) presents mandatory requirements and without strict compliance, the Ordinances are void. However, the failure to publish does not affect the power to annex; rather, "it acts as a condition subsequent, rendering the ordinance inoperative until publication is made." *Johnson v. City of Indianapolis*, 93 N.E. 17, 20 (Ind. 1910). Thus, rather than becoming void, the Ordinances at issue here simply went into effect at a later date. Further, the record shows that belated publication did not impair the Remonstrators' substantial rights since Remonstrators' request to the City for evidence of publication of the Ordinances prompted the City to publish them. Consequently, the City's belated publication amounts to no more than "[a] mere failure to follow applicable rules or procedures to the letter." *City of Kokomo ex rel. Goodnight*, 940 N.E.2d at 837. As a result, Remonstrators have not shown a violation of their substantial rights.

Nevertheless, Remonstrators advance two policy arguments to justify strict adherence to the publication requirement. First, they assert that failure to enforce publication requirements will encourage municipalities to "stockpile" annexation

12

ordinances to stymie potential political reorganization. (Appellant's Br. p. 12). However, this argument loses its force when it is understood that annexation ordinances do not become operative until publication. Second, the Remonstrators assert that without observing publication requirements, landowners will be handicapped in their ability to obtain remonstrance signatures because of uncertainty when the remonstrance period commences. Here, the trial court observed that "as a result of the prolonged delay of publication, the Remonstrators were actually afforded more time than I.C. § 36-4-3-11(a) would provide under normal circumstances in which to prepare and file their remonstrance petitions." (Appellants' App. p. 18). Consequently, we cannot agree that Remonstrators have shown that their ability to obtain remonstration signatures would be significantly impaired by the procedural oversight that occurred in this case. As Remonstrators assert no other basis to challenge the trial court's approval of the annexation, we conclude that trial court did not err by ordering the annexation.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not err when (1) it determined that Remonstrators had standing to challenge the City's annexation and (2) determined that the City's failure to comply with ordinance publication provisions did not bar annexation.

Affirmed.

BAILEY, J. and CRONE, J. concur

13