Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 05 2014, 9:51 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**NICHOLAS K. KILE**
**MARK J. CRANDLEY**
**HILLARY J. CLOSE**
Indianapolis, Indiana

**ANGELA BULLOCK**
Terre Haute, Indiana

ATTORNEY FOR APPELLEE:

**JEFFREY A. BOYLL**
Terre Haute, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| THE CITY OF SULLIVAN, | ) | |
| | ) | |
| Apellant-Defendant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | No. 77A01-1401-PL-00011 |
| NORTH AMERICAN LATEX | ) | |
| CORP, KENNETH WAYNE PLUMMER, | ) | |
| And Others Owning Property, | ) | |
| | ) | |
| Appellees-Plaintiffs. | ) | |

APPEAL FROM THE SULLIVAN SUPERIOR COURT
The Honorable Joseph D. Trout, Judge
Cause No. 77D01-1302-PL-00068

**August 5, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Appellant City of Sullivan ("the City") appeals the trial court's order granting the remonstrance petitions of appellees, North American Latex Corporation, et al. (collectively, "the Remonstrators") and declaring the City's proposed annexation of an adjacent parcel to be invalid. The City argues that the trial court erred by finding that the City failed to meet the statutory requirements contained within Indiana's annexation statute and by finding that the Remonstrators met their burden contained within the same statute.

We affirm.

**Facts and Procedural History**

On November 13, 2012, the Sullivan Common Council enacted Annexation Ordinance numbered 2012-4, seeking to annex fifty-one acres of real property south of the city ("the south annexation area") and Ordinance 2012-5, seeking to annex 1,128 acres of real property northwest of the city ("the northwest annexation area"). The City's stated purpose for annexing the northwest territory was to resolve alleged "inequities" resulting from Sullivan residents' subsidy of police and fire service to the annexation areas. Appellant's App. p. 110. Three months after the enactment of the ordinances, the Remonstrators filed their remonstrance petition challenging both ordinances. The trial court dismissed the Remonstrators' challenge to the south annexation area for lack of sufficient landowner signatures. Beginning on September 12, 2013, a two-day bench trial was held on the northwest annexation area remonstrance petition, after which the parties submitted post-hearing briefs and proposed findings of fact and conclusions thereon. The

2

trial court issued its findings of fact and conclusions thereon on December 16, 2013, finding in favor of the Remonstrators and disallowing the annexation.

The City now appeals. Additional facts will be provided as needed.

## I. Standard of Review

The trial court entered specific findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52. The purpose of making special findings is to provide the parties and reviewing courts with the theory upon which the judge decided the case so that the right of review might be preserved effectively. Willett v. Clark, 542 N.E.2d 1354, 1357 (Ind. Ct. App. 1989). Special findings, and the judgment which rests upon those findings, will be set aside only if they are clearly erroneous in that the record is devoid of facts or inferences to support the findings or that the judgment is unsupported by the findings. Matter of C.D., 614 N.E.2d 591, 593 (Ind. Ct. App. 1993). In reviewing the trial court's entry of special findings, we neither reweigh the evidence nor reassess the credibility of witnesses. Flansburg v. Flansburg, 581 N.E.2d 430, 435 (Ind. Ct. App. 1991).

The power of annexation is fundamentally legislative, and the judicial role in annexation cases is limited to that prescribed by statute. King v. City of Bloomington, 239 Ind. 548, 159 N.E.2d 563 (1959). Under the current statute, if the Remonstrators are able to garner the requisite level of support, they may appeal the annexation to the courts. See Ind. Code § 36-4-3-11.

At the remonstrance hearing, the burden is on the municipality to demonstrate its compliance with the statute. See Ind. Code § 36-4-3-13. This court's review is limited to ensuring that the municipality has not exceeded its authority and that the statutory

3

conditions for annexation have been satisfied. Chidester v. City of Hobart, 631 N.E.2d 908, 910 (Ind. 1994).

## II. Statutory Annexation Prerequisites

Indiana adopted its first annexation statute in 1824, which allowed for "virtually automatic annexation of new developments adjacent to existing municipalities." City of Carmel v. Certain Sw. Clay Twp. Annexation Territory Landowners, 868 N.E.2d 793, 796 (Ind. 2007). Indiana's annexation laws have evolved over time, but the object of annexation is still "to permit annexation of adjacent urban property." Id. (quotation omitted). The statutory framework has also retained the same three annexation stages: (1) legislative adoption of an ordinance that annexes certain territory and pledges to deliver certain services within a fixed period of time; (2) an opportunity for affected landowners to file a remonstrance; and (3) judicial review. Id. The city bears the burden of showing that it has complied with the statutory conditions for annexation. Id.

Indiana Code section 36-4-3-13 lists the prerequisites for annexation. To annex a territory, a municipality must satisfy the requirements of either subsection (b) or subsection (c) of the statute. Ind. Code § 36-4-3-13(a)(1). Subsection (c) allows annexation when: (1) one-fourth of the territory's external boundaries are contiguous to the municipality's boundaries, and (2) the municipality needs the territory for development. Ind. Code § 36-4-3-13(c).

Subsection (b) allows annexation when a contiguous area evidences an urban character. A territory is subject to annexation if it has, in fact, become part of the nearby municipality and, thus, the residents therein should not evade the accompanying

4

municipal responsibilities. The territory's urban character is evidenced by: (A) dense population, (B) subdividing, or (C) zoning for business, commercial, or residential use. Id.; Ind. Code § 36-4-3-13(b)(2).

Thus, the statute permits two independent methods of annexation. A municipality may annex a closely contiguous territory for which it has a need under subsection (c) or a less contiguous, urbanized territory under subsection (b). If the city is able to prove the conditions provided for in either section 13(b) or section 13(c), the annexation must proceed unless the Remonstrators can prove all of the requirements of section 13(e), which are:

> (A) The following services are adequately furnished by a provider other than the municipality seeking the annexation:
> (i) Police and fire protection.
> (ii) Street and road maintenance.
> (B) The annexation will have a significant financial impact on the residents or owners of land.
> (C) The annexation is not in the best interests of the owners of land in the territory proposed to be annexed as set forth in subsection (f).
> (D) One (1) of the following opposes the annexation:
> (i) At least sixty-five percent (65%) of the owners of land in the territory proposed to be annexed.
> (ii) The owners of more than seventy-five percent (75%) in assessed valuation of the land in the territory proposed to be annexed.

The City argues that, because it satisfied the requirements of Indiana Code sections 36-4-3-13(b) and 36-4-3-13(c), and because the Remonstrators failed to prove the requirements set forth in 36-4-3-13(e), the trial court clearly erred in ordering that the proposed annexation not take place.

5

## A. Subdivision Requirement

In its findings of facts and conclusions thereon, after acknowledging that the annexation statute contains no definition of the word "subdivided," the trial court concluded that, although the City claimed that the northwest annexation area is sixty percent subdivided, the evidence showed that "[o]nly 38% of the northwest annexation area is in uses consistent with a definition of subdivision. These include 178 acres (16%) in residential use, 144 acres (13%) in commercial use, and 102 acres (9%) in public and civic use." Appellant's App. p. 10. The trial court concluded that the remaining sixty-two percent of the annexation area "is in uses inconsistent with a definition of subdivision. These include 28 acres of water, 187 acres of woods, 170 acres that are vacant or right-of-way and 319 acres in agricultural uses." Id.

The City contends that the trial court erred when it concluded that the City failed to prove that it met the subdivision requirement of subsection (b). It argues that 82.5 percent of the northwest annexation area is subdivided according to the definition provided by the City's subdivision control ordinance. It claims that the trial court's refusal to use the definition found in the city's ordinance[1] is inconsistent with our

---

[1] The Sullivan Code of Ordinance defines "subdivision" as:

(1) The division of any parcel of land shown as a unit, as part of a unit, or as contiguous units on the last preceding transfer of ownership thereof, into two or more parcels, sites, or lots, any one of which is less than two acres in area, for the purpose, whether immediate or future, of transfer of ownership, provided, however, that the division or partition of land into parcels of more than two acres not involving any new streets or easements of access, and the sale or exchange of parcels between adjoining lot owners, where the sale or exchange does not create additional building sites, shall not be considered a subdivision; or

(2) The improvement of one or more parcels of land for residential, commercial or industrial structures or groups of structures involving the subdivision and allocation of

supreme court's 1997 holding in Rogers v. City of Elkhart, 688 N.E.2d 1238, 1241 (Ind. 1997). We disagree.

In Rogers, our supreme court noted that "[t]he larger object of the annexation statute is, as it has always been, to permit annexation of adjacent urban territory." Id. at 1241. It concluded that "[t]he trial court's use of [the municipality's] ordinance for subdivisions was consistent with this statutory purpose and the language of the code itself." Id. at 1242. Here, the trial court concluded that the City's definition of subdivision "is inconsistent with the objectives of the annexation statute," since the City's definition would include as "subdivided" vacant land, agricultural land, and land covered by water and woods. Appellant's App. p. 10. This conclusion is, in fact, consistent with our supreme court's holding in Rogers. Rogers does not stand for the proposition that a trial court *must* accept whatever definition of "subdivision" a municipality sets forth in the city's own ordinance, as the City appears to argue. Instead, our supreme court held that a reviewing court *may* look to "the definition a municipality uses for [purposes of planning and redevelopment] as one yardstick a court *may* employ, although there may be others not suggested to us by the parties to this case." Id. at 1242 (emphasis added). Here, the trial court carefully considered the types and proportions of uses extant on the subject territory and employed a logical and reasonable reading of the

---

land as streets or other open spaces for common uses by owners, occupants, or lease holders or as easements for the extension and maintenance of public sewer, water, storm drainage or other public utilities and facilities.

Appellant's App. pp. 9-10

7

term "subdivided." Therefore, the trial court did not clearly err in determining that the City did not meet the statute's subdivision requirement.

## B. Contiguity Requirement

The City next argues that the trial court clearly erred in concluding that the City did not meet the annexation statute's contiguity requirement.

Indiana Code section 36-4-3-13(c) provides that a municipality's proposed annexation may still be approved if the municipality cannot prove one of the three requirements of subsection (b) if the municipality can prove that (1) the annexation territory is at least one-fourth contiguous to the municipality and (2) the annexation territory is "needed and can be used by the municipality for its development in the reasonably near future."

Indiana Code section 36-4-3-1.5 defines "contiguous" as follows:

> For purposes of this chapter, territory sought to be annexed may be considered "contiguous" only if at least one-eighth (1/8) of the aggregate external boundaries of the territory coincides with the boundaries of the annexing municipality. In determining if a territory is contiguous, a strip of land less than one hundred fifty (150) feet wide which connects the annexing municipality to the territory is not considered a part of the boundaries of either the municipality or the territory.

The City presented testimony by Doug Kelley, an expert witness for the City, that the perimeter of the northwest annexation territory is 42,490 feet and that 11,271 feet of the perimeter, or 26.53 percent, is contiguous with the city's existing borders. The City also presented a 1956 city ordinance which contained a metes and bounds description of the city's borders. Using the ordinance's description of the city's boundaries and the expert witness's testimony regarding the perimeter of the northwest annexation territory,

8

the contiguous border between the city and the northwest annexation area would be 11,085 feet. The trial court noted that the 1956 ordinance contained no metes and bounds description of the boundary of the entire northwest annexation area and that "[a]lthough 11,085 feet is still more than enough to meet the one-quarter contiguity requirement, that is only true if the Court can assume that the total perimeter [of the northwest annexation territory] is 42,490 feet[.]" Appellant's App. p. 9. The trial court further stated:

> The City introduced differing calculations of the length of the contiguous boundary and could provide no reasonable explanation for the difference, which was significant. That difference causes the Court to question the City's calculation of the total perimeter length of the annexation area. The Court therefore concludes that the City did not introduce credible testimony establishing that the annexation area is one-fourth contiguous.

Id. at 16.

The City argues that the trial court clearly erred, since "the only evidence in the record on this issue shows . . . the annexation [] satisfied the 25 percent requirement." Appellant's Br. at 7. We note, however, that "[a] trier of fact is not required to believe evidence presented by a party if it is confusing, inconsistent, or contradictory." A.S.C. Corp. v. First Nat. Bank of Elwood, 241 Ind. 19, 167 N.E.2d 460 (1960). The trial court determined that the City did not meet its burden when it presented two contradictory measurements of the annexation area's boundaries. The City's allegation of error is simply a request that we judge the credibility of the witnesses and reweigh the evidence, which we will not do. See Nieto v. Kezy, 846 N.E.2d 327, 333 (Ind. Ct. App. 2006). Because the record supports the trial court's conclusion that the statutory requirement for contiguity was not met, we find no error.

## C. Needed and Useful

In addition to the requirement that at least one-fourth of the proposed annexation area's external boundaries coincide with the city's boundaries, Indiana Code section 36-4-3-13(c) requires that the City show that "the territory sought to be annexed is needed and can be used by the municipality for its development in the reasonably near future." Here, the trial court concluded that "the sole reason for the annexation is to increase the City's tax revenues at the expense of the property owners in the annexation area, which does not qualify as an appropriate need"[2] and, further, that "City population is declining, making the need for additional territory questionable." Appellant's App. p. 16.

The City argues that the trial court erred in failing to "consider evidence outside of the tax issue that demonstrates the additional purposes of the annexation," and in failing to "defer to the city's discretion by determining that the annexation territory was not needed and useful." Appellant's Br. at 30, 22. The City asserts that there are "multiple legislative purposes behind the annexation that have nothing to do with tax revenue," including the elimination of "subsidies [for the annexation territory] created by a broken property tax policy" and an "unfair tax windfall" for the businesses that have relocated outside of city limits due to the relatively recent construction of a bypass around the city for U.S. Highway 41. Id. at 23. The City maintains that the landowners and businesses in the annexation area receive the benefits of services provided by the City, without

---

[2] Under a former version of Indiana's annexation statute, our supreme court concluded that a city may not annex property for the sole purpose of increasing tax revenues. City of Aurora v. Bryant (1960), 240 Ind. 492, 165 N.E.2d 141, reh. denied. Our supreme court later determined that such purpose was also impermissible under the current version of Indiana Code section 36-4-3-13(c). Chidester v. City of Hobart (1994), Ind., 631 N.E.2d 908, 913, n. 6.

having to pay the corresponding taxes. The City contends that the trial court ignored evidence concerning the non-tax purposes of the annexation, such as the City's mayor's testimony that the City planned to improve the sewer system in the annexation area, improve some of the street systems in the annexation area, and use zoning to spur economic development in the annexation area and within the current city limits.

Despite these claims by the City, the record reveals that the trial court did in fact consider, and subsequently reject, the City's stated non-tax-related purposes for annexation. The trial court found that:

> The City introduced no evidence to suggest that it needed the property for future development. In fact, the population of the City has been steadily declining over the last several years. The population in the 2010 decennial census was 4,249. In 2000, it had been 4,617. The City introduced no plan for the development of the large tracts of agricultural and wooded land which make up 45% of the northwest annexation area.

> The sole reason for the annexation seems to be to obtain tax revenues from the northwest annexation area. In the public notice of annexation, sent by the City to each of the parcel owners in the northwest annexation area, Mayor Lamb indicated three reasons why annexation was being sought. The first two clearly pertained only to increasing tax revenues. The first stated, "First, to survive and thrive as a community, it is essential that Sullivan's corporate boundaries reach our growth area which is the U.S. 41 corridor from the north to the west and around to the south. In order to achieve that objective, your property must be annexed. Before the by-pass was built, the Sullivan commercial corridor went right through the heart of downtown Sullivan. That is no longer the case. Our commercial corridor has now migrated to the by-pass. We still have the same demands for our infrastructure and services, but we have lost the tax base." The second reason alleges that Sullivan taxpayers unfairly subsidize services to those outside its corporate boundaries. In particular, the City claims that a Sullivan taxpayer pays almost 14 times as much for fire service as the residents in the northwest annexation area. Both Mayor Lamb and the City's financial expert, Eric Reedy, indicated that the main purpose of the annexation ordinance was to end the so called "fire subsidy." When asked to state the reasons why the annexation area was needed, Reedy testified,

11

"Annexation is about fair tax policy, because of the fire subsidy." Mayor Lamb testified that, although the City had the legal right to end this so-called fire subsidy by terminating the City's contract with Hamilton Township, he preferred to address the issue by annexation.

An area of land is not "needed" and sought for development in the reasonably future when the sole purpose of the annexation is to increase a city's tax dollars. The Court finds that the City has failed to carry its burden of proof that the northwest annexation area is needed and can be used for its development in the reasonably near future.

Appellant's App. pp. 10-11 (internal citations omitted).

Resolution of this issue was a question of fact for determination by the trial court. The trial court noted that the city is not only not growing, its population is actually declining. The trial court also observed that the City failed to introduce a plan for development for a substantial part of the annexation area. The trial court quoted the City's public notice of annexation, which indicated that two of the purposes of the annexation were to regain the tax base the City lost when the U.S. 41 bypass was built and many of the area's business migrated, and to create "fair tax policy" by ending the "fire subsidy" resulting from the City's residents paying higher taxes for fire service as residents of the northwest territory.

The City's claims in this regard are nothing more than a request to reweigh the evidence and judge for ourselves the credibility of the witnesses, which we will not do. After considering the evidence most favorable to the trial court's judgment, as we must, we cannot conclude that the record is devoid of facts or inferences to support the trial court's findings or that its judgment is unsupported by the findings. We therefore hold

that the trial court did not clearly err in finding that the proposed annexation was motivated solely by the desire for increased tax revenue.

### D. Subsection (e) Factors

Even where a municipality satisfies the requirements of subsection (b) or subsection (c), Indiana Code subsection 36-4-3-13(e) provides that a court shall order a proposed annexation not to take place if the Remonstrators can establish that (1) police and fire protection and street and road maintenance are "adequately furnished by a provider other than the municipality seeking the annexation"; (2) the annexation "will have a significant financial impact on the residents or owners of land"; (3) the annexation "is not in the best interests of the owners of land in the territory proposed to be annexed"; and (4) the annexation is opposed by either sixty-five percent of the owners of land in the proposed annexation area or the owners of seventy-five percent in "assessed valuation of the land in the territory proposed to be annexed." Where the territories to be annexed do not exceed 100 parcels of land and have eighty percent of their boundaries contiguous to the annexing municipality, seventy-five percent of the landowners must oppose annexation.

The City argues that the Remonstrators failed to establish all of the factors set forth in subsection (e). Specifically, it argues that "the undisputed evidence showed that both fire and police protection are already adequately furnished to the Annexation Territory by the City." Appellant's Br. at 33.

On the matter of police protection, the trial court found that:

13

[P]olice protection is adequately provided by the Sullivan County Sheriff's Department. Sheriff Brian Kinnett testified that his department provides essential police protection to the northwest annexation area. Several of the remonstrators, including J.R. Drew and Marty Blann, testified that whenever they have needed police services, it was always the Sheriff's Department, and not the City Police, that responded. The City claims that its officers frequently are dispatched to the northwest annexation area. Although this is certainly true, their dispatch to that area, according to Sheriff Kinnett, is pursuant to an informal agreement between the two police agencies, which allows each of them to use minimum staff during overnight hours, while relying on the other agency for assistance when needed. That agreement is for the benefit of both police agencies and does not imply that the county does not provide adequate police protection in the northwest annexation area.

Appellant's App. pp. 11-12.

Regarding the annexation area's fire protection, the trial court found that:

Hamilton Township currently provides fire protection for the northwest annexation area. Both the City of Sullivan and the northwest annexation area are part of the larger Hamilton Township.

* * *

The Deputy Trustee, L.J. Sergent, testified about the ways in which Hamilton Township arranges fire protection for its citizens, including those in the northwest annexation area. A major part of that protection has been managed for many years through a contract with the City of Sullivan. The current version of that contract is dated January 1, 2010 and was introduced as Plaintiffs' Exhibit A. That agreement, which is entitled an "Agreement for Fire Protection Services," calls for a payment by Hamilton Township of $60,000.00 per year, until either party gives notice of termination. The agreement further states, "The parties agree that the City will furnish such Fire Protection Services to the Township at no additional cost other than what is contained herein . . . ." According to L.J. Sergent, however, Hamilton Township does not simply pay this contractual amount to the City and rely on the City to provide all of its essential fire protection. Hamilton Township owns and has outfitted two of the eight firefighting vehicles currently owned by the City.

* * *

14

The City claims that it provides fire protection for the northwest annexation area, but cites only the agreement for fire protection services. It ignores the other contributions to township fire protection made by the township trustee's office.

On this evidence, the trial court concluded that

[T]he remonstrators did prove all of the conditions set forth in Indiana Code 36-4-3-13(e)(2). Specifically, the remonstrators proved that:

Police and fire protection are adequately furnished by a provider other than the City of Sullivan. Sullivan County Sheriffs Department provides police service. Hamilton Township provides fire protection.

The remonstrators also proved that street and road maintenance are adequately furnished by a provider other than the City of Sullivan, specifically the Sullivan County Highway Department.

The remonstrators proved that annexation will have a significant financial impact on the owners of land, including a significant increase in real property taxes for all parcel owners in the annexation area and a significant increase in personal property taxes for commercial enterprises.

Finally, the remonstrators proved that 65% of the owners of the land in the annexation area oppose annexation.

* * *

The Court concludes that annexation is not in the best interests of the owners of land in the annexation area as no additional services or benefits will be provided by the City and that the only things that property owners will experience are a significant tax increase and zoning restrictions.

Id. at 16.

Whether police and fire protection are adequately provided is a question of fact for the trial court. The trial court found that Hamilton Township maintains a fire department and owns fire trucks and fire equipment. The township fire department is staffed by firefighters from the City, but the township pays a contractual sum for those firefighters'

15

salaries. The trial court found that the township's fire department provides adequate fire protection for the northwest annexation area. The trial court found that police protection for the annexation area is adequately provided by the Sullivan County Sherriff's Department, in light of several of the remonstrator's testimony that it is the Sherriff's department, not the City police, that have most often responded to calls from the annexation area. These findings are supported by the record. Therefore, the trial court's conclusion that Hamilton Township adequately provides fire protection to the annexation area and Sullivan County adequately provides police protection to the annexation area was not clearly erroneous.

### III. Conclusion

For all of these reasons, we conclude that the trial court did not clearly err when it determined that the City failed to meet its burden of proving the requirements set forth in Indiana's annexation statute and that the Remonstrators satisfied their burden of proving that the annexation should not proceed.

Affirmed.

RILEY, J., and CRONE, J., concur.