James E. BRADLEY, Kay C. Miller, and Certain Other Persons Owning Property in the Proposed Annexed Territory, Appellants (Plaintiffs Below),

v.

CITY OF NEW CASTLE, Indiana, Appellee (Defendant Below).

No. 33S01–0104–CV–195.

Supreme Court of Indiana.

March 12, 2002.

George T. Patton, Jr., Kevin S. Smith, Bryan H. Babb, Bose McKinney & Evans, LLP, Indianapolis, IN, E. Edward Dunsmore, Knightstown, IN, Attorneys for Appellants.

John H. Brooke, Casey D. Cloyd, Brooke & Cloyd, P.C., Muncie, IN, Attor-

neys for Amici Curiae Citizens Opposing Annexation, et. al.

Kevin W. Dogan, Indianapolis, IN, David L. Copenhaver, R. Scott Hayes, Hayes, Copenhaver & Crider, New Castle, IN, R. Thomas Bodkin, Jason P. Lueking, Douglas A. Welp, Bamberger, Foreman, Oswald & Hahn, LLP, Evansville, IN, Attorneys for Appellees.

Nana Quay–Smith, Karl L. Mulvaney, Bingham Summers Welsh & Spilman, Indianapolis, IN, Attorneys for Amicus Curiae Indiana Municipal Lawyers Association.

SHEPARD, Chief Justice.

In 1992, the City of New Castle annexed some 750 acres in Henry County with an estimated population of 1,700 residents.

The trial court rejected all the Remonstrators' challenges to the annexation. The Court of Appeals reversed, faulting the City Council on a variety of procedural points (although the Remonstrators make no claim that their substantive rights were violated) and faulting the trial court for allowing the City to supply additional evidence in support of the adequacy of the Fiscal Plan. Annexation is essentially a legislative process, and courts should not micromanage it.

We affirm the trial court.

## Facts and Procedural History

On October 19, 1992, the Common Council of the City of New Castle held a public information hearing on proposed Ordinance No. 2892, to annex four contiguous areas: Elmwood Addition (Area 1); Blue River Valley Addition (Area 2); McGrew Addition (Area 3); and Wildwood Estates (Area 4).

The Council followed a "three readings" approach. On November 2nd, it adopted a written Fiscal Plan for implementing the annexation and voted in favor of the Ordinance on first reading. On November 16th, the Council amended the Ordinance to eliminate a twenty-four acre tract from Area 4, thereby splitting that Area into 4 East and 4 West, and also amended the Plan. It then passed the Amended Ordinance on second reading. On December 7th, the Council again amended the Plan and passed the Amended Ordinance on final reading.

In February 1993, certain property owners residing in the annexed areas filed a Petition for Declaratory Judgment and a Petition for Remonstrance. These Remonstrators claimed that the Council failed to observe some statutorily required procedures in passing the Ordinance. They also challenged the sufficiency of the Fiscal Plan as adopted at the time of the Ordinance's passage.

In May 1994, Remonstrators filed a Third Amended Petition for Declaratory Judgment and Remonstrance. Judge John Kellam treated the City's response as a motion for summary judgment and, in July 1995, granted summary judgment in favor of the City on the petition for declaratory judgment and on portions of the petition for remonstrance.[1]

The hearing on the remaining portions of the petition for remonstrance began in November 1995. Remonstrators requested a continuance after the City changed its theory of annexation on Area 2 to reflect an intervening Court of Appeals decision. The trial court granted the continuance and the hearing resumed in July 1996. During the hearing, the court allowed the

---

1. The Remonstrators sought an interlocutory appeal on the remonstrance claims, but the parties later filed jointly for its dismissal. (R. at 555–60.) Remonstrators did not appeal the declaratory judgment ruling. *See Bradley v. City of New Castle,* 730 N.E.2d 771, 774 (Ind.Ct.App.2000), *transfer granted, opinion vacated,* 753 N.E.2d 10 (Ind.2001).

City to present evidence revising and supplementing the Fiscal Plan that the Council adopted in 1992.

On March 3, 1997, the City filed a motion under Ind. Trial Rule 53.2, and on April 8 this Court appointed Judge Barbara A. Harcourt to replace Judge Kellam. On June 17, 1998, Special Judge Harcourt issued a judgment in the City's favor, supported by findings of fact and conclusions of law.

Remonstrators appealed. The Court of Appeals held that the trial court erred in granting partial summary judgment on the petition for remonstrance and in allowing the City to make significant changes to its Fiscal Plan during the remonstrance hearing. *Bradley v. City of New Castle,* 730 N.E.2d 771, 787 (Ind.Ct.App.2000). We granted transfer. 753 N.E.2d 10 (Ind. 2001).

## I. Standard of Review for Annexation Challenges

*A. The Nature of Annexation.* For much of Indiana history, aggrieved property owners had virtually no recourse to protest annexation.[2] Over a century ago we said:

> [N]o property is taken from the owner, by annexation, no private right of the owner is affected; the act simply changes the property and its owner, in their civil relation to certain public authority. This power the State has the right to exercise, directly or indirectly, within constitutional limits, at any time.

*Stilz v. City of Indianapolis,* 55 Ind. 515, 523 (1877).

In short, "annexation of territory to a city is not a taking of the property, nor does it deprive any person of his property." *Taggart v. Claypool,* 145 Ind. 590, 596, 44 N.E. 18, 20 (1896). Property owners therefore have no vested interest in the maintenance of municipal boundaries at any particular location. *Forks v. City of Warsaw,* 257 Ind. 237, 273 N.E.2d 856 (1971), *cert. denied,* 409 U.S. 841, 93 S.Ct. 39, 34 L.Ed.2d 80 (1972).

*B. The Trial Court's Role.* Annexation is an essentially legislative function. *Rogers v. Mun. City of Elkhart,* 688 N.E.2d at 1239 (citing *City of Indianapolis v. Wynn,* 239 Ind. 567, 157 N.E.2d 828 (1959)). It is subject to judicial review only as provided by statute, and "[t]he larger object of the annexation statute is, as it always has been, to permit annexation of adjacent urban territory." *Id.* at 1242.

Therefore, a remonstrator's challenge to annexation is not a regular lawsuit, but rather a special proceeding the General Assembly may control. *See Thorn v. Silver,* 174 Ind. 504, 510, 89 N.E. 943, 946 (1909) (action by remonstrators challenging a drain construction assessment). Indiana Code §§ 36–4–3–11 through 13 establish requirements for remonstrances;[3] give trial courts authority to hear and enter judgment on remonstrances;[4] and direct courts to order annexation provided that the city meets specified requirements on matters such as

---

**2.** Indiana's statutory annexation scheme dates back to 1824, when the first annexation statute allowed virtually automatic annexation of improved land whenever an adjacent out-lot was platted into new building lots and recorded. *See Rogers v. Mun. City of Elkhart,* 688 N.E.2d 1238, 1241 n. 5 (Ind.1997) (citing "An act for the incorporation of Towns," 1824 Ind.Rev.Stat., ch. CXI § 14, at 417 (Jan. 30, 1824)). "The acts of building and recording

building lots were viewed as constructive consent to annexation." *Id.* (citing *Forsyth v. City of Hammond,* 142 Ind. 505, 40 N.E. 267 (1895)).

**3.** Ind.Code Ann. § 36–4–3–11 (West Supp.1992)("Section 11").

**4.** Ind.Code Ann. § 36–4–3–12 (West 1992)("Section 12").

contiguity and has adopted a fiscal plan showing that it will provide municipal services to the annexed area that are equivalent to those enjoyed by residents in similar areas of the municipality.[5]

The trial court's role is to decide whether the municipality has operated within its authority and satisfied the statutory conditions for annexation. *Rogers*, 688 N.E.2d at 1239–40. At the remonstrance hearing, the municipality bears the burden of showing compliance with the requirements of the annexation statute. *Id.*

Although the municipality bears the burden of proof when properly challenged, we afford legislative judgment considerable deference. It is well-established that we avoid scrutinizing legislative processes, even those that are constitutionally mandated. *See State ex rel. Masariu v. Marion Superior Court No. 1*, 621 N.E.2d 1097, 1098 (Ind.1993) ("[T]his Court has held repeatedly that courts should not intermeddle with the internal functions of either the Executive or Legislative branches of Government."); *see also Roeschlein v. Thomas*, 258 Ind. 16, 280 N.E.2d 581 (1972).

The General Assembly has delegated part of its power to re-establish and change governmental unit boundaries to local legislatures. *See Perry Township v. Indianapolis Power & Light Co.*, 224 Ind. 59, 64 N.E.2d 296 (1946). We do not abandon our deferential approach simply because the state legislature has delegated a legislative function to subordinate agents, the municipalities. *See City of Valparaiso v. Gardner*, 97 Ind. 1, 3 (1884)

("[C]ourts will not interfere with mere matters of municipal legislation....").

Therefore, a trial court hearing a remonstrance is not an examiner conducting an audit of a challenged fiscal plan. Rather, it should focus on whether that plan represents a credible commitment by the municipality to provide the annexed area with comparable capital and non-capital services.

**B. The Appellate Court's Role.** When a trial court enters special findings, as it did here, we review issues of fact for sufficiency of the evidence and look to the record only for evidence favorable to the judgment. Ind. Trial Rule 52; *Rogers*, 688 N.E.2d at 1240. We do not set aside findings and judgments unless they are clearly erroneous. T.R. 52. We review questions of law *de novo*. *Rogers*, 688 N.E.2d at 1240 (citation omitted).

## II. Scope of Review for Annexation Remonstrances

Remonstrators argue that the City exceeded its authority by violating certain statutory directives concerning the passage of ordinances. (Appellants' Br. at 57.) Some of these directives appear in Indiana Code Chapter 36–4–3, Municipal Annexation and Disannexation, although not in the sections that deal specifically with remonstrance proceedings.[6] (Appellants' Br. at 57, 65.) Others appear elsewhere in the Code. (Appellants' Br. at 62, 67.) Remonstrators do not argue that any of these violations impaired their substantial rights or caused them specific harm.

For example, Remonstrators point to the requirement in Ind.Code § 36–4–3–3 that says, "The legislative body of a munic-

---

5. Ind.Code Ann. § 36–4–3–13 (West 1992)("Section 13"); *Chidester v. City of Hobart*, 631 N.E.2d 908, 910 (Ind.1994)("*Chidester II*").

6. Only Sections 11 through 13 are specific to remonstrances.

ipality may, by an ordinance defining the corporate boundaries of the municipality, annex territory. . . ." Remonstrators argue that this statute requires a legal description and, because the City did not prove that the annexation ordinance (which referred to City boundaries generally) had a map attached to define the City's legal boundaries, the annexation fails. They do not claim that they were misled or disadvantaged in any way by this approach.[7]

As another example, Remonstrators point to Ind.Code § 36–4–6–13, which says: "A two-thirds (2/3) vote of all the elected members, after unanimous consent of the members present to consider the ordinance, is required to pass an ordinance of the legislative body on the same day or at the same meeting at which it is introduced." (Appellants' Br. at 62–63.) They claim that the November 16, 1992, Council action deleting twenty-four acres of land from Area 4 was more than just an amendment and thus triggered the "unanimous consent" requirement.[8] (Appellants' Br. at 64–65.) They do not, however, assert any specific harm arising out of this course of events.

Judge Kellam declined to address these individual challenges on the merits and granted summary judgment to the City, concluding that all sufficiently specific allegations fell outside the scope of judicial review. The Court of Appeals disagreed and remanded for a new remonstrance hearing. *Bradley*, 730 N.E.2d at 787.

We begin by noting that the separation of powers doctrine, which both the trial court and Court of Appeals discussed at length, does not preclude judicial review, if only because Indiana's legislature has provided a specific judicial role in annexation challenges. The question is whether judicial review should extend beyond the confines of Sections 11 through 13.

■ The Court of Appeals "f[ou]nd nothing in the Annexation Act [9] that shows that the General Assembly intended to limit the judicial review of a municipalit[y's] annexation power." *Bradley*, 730 N.E.2d at 782. It therefore concluded that Remonstrators could challenge the annexation based on noncompliance with statutes that do not deal specifically with remonstrances.

We disagree. According to Ind.Code § 36–4–3–13, "a court *shall* order a proposed annexation to take place if the following requirements are met." (Emphasis added.) These requirements are contiguity (or specified alternatives to contiguity) plus a fiscal plan that covers enumerated subjects. This language seems plain enough: if the City satisfies Section 13's listed requirements, the court shall order annexation.

■ We recognize, of course, that annexing municipalities may commit procedural wrongs so severe that courts must act to protect remonstrators' substantial rights. An example of such is *King v. City of Bloomington*, 239 Ind. 548, 159 N.E.2d 563 (1959). There, remonstrators claimed to have incurred great expense to challenge an annexation ordinance. 239 Ind.

---

7. Remonstrators concede that Ind.Code § 36–4–3–4 provided an alternative basis for annexation and does not require this description. (Appellants' Br. at 61.) They argue, however, that because the City voluntarily said it was acting pursuant to Section 3, it must strictly comply with Section 3's requirements. (Appellants' Br. at 61–62.) We need not address this argument for reasons explained below.

8. The City disagrees and also points out that the ordinance did not actually pass into law until the third reading and signing on December 7th. (Appellee's Br. at 29–30, 32–33.)

9. Municipal Annexation and Disannexation Act, Ind.Code § 36–4–3–1 et seq.

at 556, 159 N.E.2d at 567. If they succeeded, a statute prohibited any reannexation attempt for two years. 239 Ind. at 558, 159 N.E.2d at 568. In an alleged attempt to frustrate the remonstrators' efforts, the city repealed the ordinance and then three months later started the entire process over by annexing substantially the same territory under a new ordinance. 239 Ind. at 557, 159 N.E.2d at 567–68.

Although no statute forbade this practice, this Court held:

> [I]f it is shown that a defendant prepares at considerable time and expense to defend and the action is then dismissed for the avowed purpose of repeatedly filing like actions to harass and wear down the defendant without giving him an opportunity to adjudicate and settle the issues on the merits, equity has a remedy. . . . The principle is invoked to prevent vexatious litigation, multiplicities of suits, or circuit of actions. Equity will not suffer a wrong without a remedy.

239 Ind. at 563–64, 159 N.E.2d at 570–71 (citations omitted).

Similarly, due process and due course of law may require judicial relief where plausible claims of fraud or discrimination are established. *See, e.g., State ex rel. City of Marion v. Grant Circuit Court,* 239 Ind. 315, 157 N.E.2d 188 (1959)(allowing judicial review of city's sewage disposal rate scheme). However, "[w]e start from the premise that there can be no protected property interest in adherence to established procedure . . . . and the mere failure to follow applicable rules or procedures does not, without more, amount to a due process violation." *Shook Heavy & Envtl. Const. Group v. City of Kokomo,* 632 N.E.2d 355, 361 (Ind.1994)(quoting *Rice v. Scott County Sch. Dist.,* 526 N.E.2d 1193, 1196–97 (Ind.Ct.App.1988)) (citations omit-

ted)(denying judicial review to unsuccessful bidder for public contract).

As we noted above, Remonstrators' complaints here are relatively technical in nature, and do not assert any impairment of substantive rights. The trial court therefore correctly concluded that the alleged procedural violations fell outside the scope of judicial review of annexations.

### III. A Balanced Approach to Fiscal Plan Review

Section 13 requires "that a city's annexation plan show that the city will promptly provide the annexed territory with municipal services equivalent to those it already provides in similar areas of the existing city." *Chidester II,* 631 N.E.2d at 910. Specifically, at the time the City passed its annexation ordinance, it was also required to adopt a written fiscal plan showing:

(1) The cost estimates of planned services to be furnished to the territory to be annexed.

(2) The method or methods of financing the planned services.

(3) The plan for the organization and extension of services.

(4) That planned services of a noncapital nature, including police protection, fire protection, street and road maintenance, and other noncapital services normally provided within the corporate boundaries, will be provided to the annexed territory within one (1) year after the effective date of annexation, and that they will be provided in a manner equivalent in standard and scope to those noncapital services provided to areas within the corporate boundaries that have similar topography, patterns of land use, and population density.

(5) That services of a capital improvement nature, including street construction, street lighting, sewer facil-

ities, water facilities, and stormwater drainage facilities, will be provided to the annexed territory within three (3) years after the effective date of the annexation, in the same manner as those services are provided to areas within the corporate boundaries that have similar topography, patterns of land use, and population density, and in a manner consistent with federal, state, and local laws, procedures, and planning criteria.

(6) The plan for hiring the employees of other governmental entities whose jobs will be eliminated by the proposed annexation, although the municipality is not required to hire any employees.

Ind.Code Ann. § 36–4–3–13(d)(West Supp. 1992).

■ It is undisputed that the City did adopt a written fiscal plan that covered all of these topics to some extent. Remonstrators argue that the trial court erred by allowing the City to amend and supplement that Plan at the hearing, to meet its burden of proving the Plan sufficient. (Appellants' Br. at 67–68.) The issue, then, is whether a fiscal plan is frozen as of the date of its adoption for purposes of evaluating its legal sufficiency.

We answered this question in *City of Hobart v. Chidester*, 596 N.E.2d 1374 (Ind.1992)("*Chidester I*"), *after remand*, 631 N.E.2d 908. There, remonstrators argued that the City of Hobart's fiscal plan failed to set out all the information required under the statute. *Id.* at 1375. The City introduced evidence at trial addressing this deficiency. *Id.* We said:

> Remonstrators are correct in that the plan must be more than a mere recital of the statutory language. We do not think, however, that comparisons between the city's topography, patterns of land use, and population density and

those of the annexed territory need be set out in the plan itself. Such comparisons would do little to advance the ability of landowners to enforce their rights to services under the plan. . . . The statutes do call upon the trial court to determine whether the city's written resolution and plan are according to statute, but they also tell the court to "enter judgment on the question of the annexation *according to the evidence which either party may introduce*." Ind.Code § 36–4–3–12(a)(2)(West Supp.1991). . . . There would be no need for an evidentiary hearing . . . if all proof of a city's ability to provide like services had to be set out in the written plan.

*Id.* at 1378 (emphasis added).

■ Here, Judge Harcourt found that "[t]he Fiscal Plan contained a number of errors. Some of which were quite obvious i.e. that the tax increase from 8.2465% to 14.3604% was a 6% increase [as opposed to a $6 increase]." (R. at 900.) Most significantly, the required capital improvement expense for water services should have been $78,500 rather than the $11,000 shown in the Plan. (R. at 906.) After taking into account the evidence at the hearing, however, Judge Harcourt found as fact that:

> The current building, policing, fire and medical, water, sewage, street lighting, street and road maintenance, street construction, parks, animal control, transit and administrative services currently provided to the citizens of New Castle in comparable areas will be provided to the citizens of the annexed areas in a manner that is equivalent . . . in standard and scope. This includes both capital and non-capital services. All of the non-capital services will be supplied to the annexed territory within one year of the date of annexation and all capital expen-

ditures will be within three years of the date of annexation.

(R. at 911.) She went on to say:

19. The Court agrees that the municipality, bearing the burden of proof, may present matters outside the Fiscal Plan during the trial of the case. The municipality is not required to include every detail in the plan which may be presented at trial.

20. However, at some point new evidence presented at trial would constitute a complete reworking of the plan. Such reworking of the plan would create undue hardship upon remonstrators.

. . . .

34. The Court . . . identified three purposes for written fiscal plans in *Ho[ ]bart v. Chidester:* [10]

"First, the publication of the written plan permits landowners to make an intelligent decision as to whether or not to accept annexation or remonstrate.

Second, requiring a written plan makes the opportunity for remonstrance and judicial review more realistic. As a practical ma[tt]er, more than vague promises are needed for a Court to test a city's ability to provide like services to the annexed territory. Third, a fiscal plan needs to be in writing to protect the rights of the landowners to institute proceedings to force the annexing city to provide the services pro[mis]ed under the plan." *Hobart* at 1377–78.

35. In the present case, the Fiscal Plan certainly allowed the remonstrators to determine whether or not to remonstrate. They chose to remonstrate.

36. The written plan also allowed for a complete judicial review.

37. The Fiscal Plan quite clearly stated what services were to be provided to the areas being annexed.

38. The Fiscal Plan contained some errors. Some of the errors [were] obvious, such as the percentage of increase of taxes and could easily be identified by the lay public as well as the Court. Other errors involved an increase of funds needed, such as sewage costs. These increases were clearly identified.

39. The Plan's errors were corrected by amendment or at trial. At trial, the Plan still served as the basis for review.

40. The third purpose served by a plan is protection for landowners in the future. The Plan in this case, along with the extensive testimony and exhibits produced at trial certainly provides the landowners in the Annex Areas 1, 2, 3, 4 East and 4 West with a concrete statement of the city's promise to provide certain services to them.

. . . .

43. The Court concludes that the city has met its burden with regard to provision of services to annexed areas, both capital and non-capital in a manner which is equivalent as that provided to the comparable areas. The city has carried its burden as to the cost of services to annexed areas and method of financing the services.

. . . .

48. Therefore, the Court concludes that the Fiscal Plan as supplemented at trial is not so seriously defective as to thwart the purposes announced under *Hobart v. Chidester.*

49. The central issue remains as to whether or not the evidence offered at trial in 1995 and 1996 essentially rewrote the Fiscal Plan to the point that

**10.** This refers to *Chidester I.*

substantial unfairness resulted to the remonstrators.

. . . .

52. This case presents serious, strong competing public policies. On one hand, is the need for municipalities to grow in a regulated, planned fashion. On the other hand, individual landowners need to be fully informed of proposed annexation actions. These interests must always be carefully balanced.

. . . .

55. The function of the Court in the annexation process is quite limited. "Annexation is primarily a legislative decision. Nevertheless, the judiciary is charged with ensuring that the minimum requirements for annexation, as prescribed by the General Assembly have been satisfied." *Town of Sellersburg v. Proposed Annexation of Certain Property*, 677 N.E.2d 608, 612 (Ind.App. 1997); *Chidester v. City of Hobart*, 631 N.E.2d 908, 910 (Ind.1994).

56. It appears to the Court that this case presents a close question.

. . . .

58. The city made a number of errors in its Fiscal Plan and the Plan preparation could be termed "sloppy."

59. Plaintiffs' expert witness testified that errors may be expected for Fiscal Plans.

. . . .

61. . . . . [A]t the end of the trial in this case, the remonstrators had complete information as to the city's plans for provision of services to the annexed areas.

62. The Court concludes that the errors are not fatal to the Fiscal Plan or to the annexation process as a whole. The City's supplementation of the Plan at trial did not unduly prejudice Plaintiffs. The city has borne its burden of proving it met the minimum requirements set forth by the Indiana General Assembly. (R. at 915–22.)

We quote these findings and conclusions at length because Judge Harcourt followed the appropriate path. Her analysis correctly focused on the purposes for requiring fiscal plans and measured the City's Plan against those purposes. She allowed the City reasonable leeway in updating the Plan within the bounds of fairness to the Remonstrators.

At the end of the day, Judge Harcourt concluded that although the Plan was imperfect it was legally sufficient to protect the annexed landowners' future rights. This conclusion is supported by sufficient facts, and it is a correct application of the law.

### Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.