## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 08 2016, 5:45 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS

Jim Brugh
Logansport, Indiana

ATTORNEYS FOR APPELLEES

Nicholas K. Kile
Mark J. Crandley
Hillary J. Close
Barnes & Thornburg, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of Ordinance #2013-09, as amended, the South and West Area Annexation Ordinance, an Ordinance Seeking to Annex Certain Property to the City of Logansport, Indiana

Lindsay R. Ruby, Cass County, Indiana, acting by and through the Cass County Commissioners, and also, 78% of the Affected Landowners too numerous to be listed in the caption,

*Appellants-Remonstrators,*

January 8, 2016

Court of Appeals Case No.
09A05-1504-PL-170

Appeal from the Cass Superior Court

The Honorable Douglas A. Tate, Special Judge

Trial Court Cause No.
09D02-1310-PL-36

v.

The City of Logansport, Indiana, acting by and through Ted Franklin, in his capacity as Mayor of the City of Logansport, and the Logansport Common Council,

*Appellees-Respondents*

**Crone, Judge.**

# Case Summary

The City of Logansport ("the City"), acting by and through the Logansport Common Council ("the Council"), introduced an ordinance proposing to annex territory to the south and west of the City's boundaries ("the Annexation Territory"). The Council and Logansport Mayor Ted Franklin ("the Mayor") adopted a written fiscal plan for the proposed annexation. After a public hearing, the Council amended and adopted the annexation ordinance, which the Mayor approved. Landowners in the Annexation Territory filed remonstrance petitions objecting to the proposed annexation. The landowners and the Cass County Commissioners (collectively "the Remonstrators") filed a complaint against the City. The trial court held a hearing and entered a judgment ordering that the annexation take place.

On appeal, the Remonstrators argue that the trial court's judgment is clearly erroneous, claiming that (1) the ordinance does not adequately describe the

Annexation Territory's boundaries; (2) the City did not present sufficient evidence regarding the requisite contiguity of its boundaries with those of the Annexation Territory; (3) the City did not present sufficient evidence that the Annexation Territory is needed and can be used for its development in the reasonably near future; (4) the City's fiscal plan is inadequate; and (5) the Remonstrators established that the annexation will have a significant financial impact on residents or landowners. We disagree in all respects and therefore affirm the trial court.

## Facts and Procedural History[1]

In March 2013, the Council introduced Ordinance #2013-09 ("the Ordinance"), which proposed to annex the Annexation Territory. The Council and the Mayor adopted a written fiscal plan for the proposed annexation. In May 2013, the Council held a public hearing on the Ordinance. In July 2013, the Council amended the Ordinance in response to public comments and adopted it. The Mayor approved the amended Ordinance.

Landowners in the Annexation Territory filed remonstrance petitions objecting to the proposed annexation, and in October 2013 the Remonstrators filed a complaint against the City. In February 2015, the trial court held a three-day

---

[1] An appellant's statement of the case "shall briefly describe the nature of the case, the course of the proceedings relevant to the issues presented for review, and the disposition of these issues by the trial court[.]" Ind. Appellate Rule 46(A)(5). A substantial portion of the Remonstrators' statement of the case is legal argument. An appellant's statement of facts "shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed" and "shall be in narrative form[.]" Ind. Appellate Rule 46(A)(6). The Remonstrators' statement of facts is argumentative, self-serving, and disjointed.

hearing on the matter. In a March 2015 judgment containing extensive findings of fact and conclusions thereon, the trial court ordered that the annexation take place. The Remonstrators now appeal. Additional facts will be provided as necessary.

## Discussion and Decision

[5] The trial court entered findings of fact and conclusions thereon at the parties' request pursuant to Indiana Trial Rule 52.[2] "The purpose of specific findings and conclusions is to provide the parties and reviewing courts with the legal theory upon which the trial court relied in reaching its decision." *Estate of Kappel v. Kappel*, 979 N.E.2d 642, 652 (Ind. Ct. App. 2012). "[W]e use a two-tiered standard of review: we determine whether the evidence supports the findings, and whether the findings support the judgment." *Kahn v. Baker*, 36 N.E.3d 1103, 1112 (Ind. Ct. App. 2015), *trans. denied*. "We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment." *Id*. "The trial court's findings or judgment will be set aside only if they are clearly erroneous. A finding of fact is clearly erroneous if the record lacks evidence or reasonable inferences from the evidence to support it." *E.W. v. J.W.*, 20 N.E.3d 889, 894 (Ind. Ct. App. 2014) (citation omitted), *trans. denied* (2015). "A judgment is clearly erroneous if it is unsupported by the conclusions, and conclusions are clearly erroneous if they

---

[2] We commend the trial court for the thoughtfulness and thoroughness of its findings and conclusions, which greatly facilitated our review.

are unsupported by the findings." *A.G.R. ex rel. Conflenti v. Huff*, 815 N.E.2d 120, 124 (Ind. Ct. App. 2004), *trans. denied* (2005). We defer substantially to findings of fact but review questions of law de novo. *Estate of Kappel*, 979 N.E.2d at 651-52. "We may affirm a judgment on any legal theory, whether or not relied upon by the trial court, so long as the trial court's findings are not clearly erroneous and support the theory adopted." *Id.* at 652.

[6] The Indiana Supreme Court has stated that "[a]nnexation is essentially a legislative process, and courts should not micromanage it." *Bradley v. City of New Castle*, 764 N.E.2d 212, 214 (Ind. 2002). "Generally, the annexation process formally begins when a municipality adopts an ordinance annexing territory …. The legislative adoption of the ordinance is followed by an opportunity for remonstrance by affected landowners and judicial review." *Fight Against Brownsburg Annexation v. Town of Brownsburg*, 32 N.E.3d 798, 801 (Ind. Ct. App. 2015) (citation omitted).

[7] "Indiana Code § 36-4-3-13 lists the prerequisites for annexation." *City of Carmel v. Certain Sw. Clay Twp. Annexation Territory Landowners*, 868 N.E.2d 793, 797 (Ind. 2007). "If the municipality meets the requirements of subsections 13(b) or 13(c) and subsection 13(d), the court must order the annexation to proceed." *Id.*; *see* Ind. Code § 36-4-3-13(a) (providing that trial court "*shall* order a proposed annexation to take place" if foregoing requirements are met) (emphasis added). In this case, the trial court found that the City met the requirements of subsections 13(c) and 13(d). "Even if those findings are favorable to the municipality, however, the remonstrators can still prevail if

they establish grounds listed in subsection 13(e)." *City of Carmel*, 868 N.E.2d at 797-98; *see* Ind. Code § 36-4-3-13(e) (providing that trial court "shall" order "a proposed annexation *not* to take place" if certain conditions exist) (emphasis added). The trial court found that the Remonstrators failed to establish two of those grounds here.

[8] On appeal, the Remonstrators contend that the Ordinance does not adequately describe the Annexation Territory's boundaries. They also contend that the City failed to carry its burden as to subsections 13(c) and 13(d) and that they satisfied their burden as to subsection 13(e). We address each contention and relevant subsection in turn.

## Section 1 – The trial court did not clearly err in concluding that the adequacy of the Ordinance's description of the Annexation Territory's boundaries is outside the scope of judicial review.

[9] Indiana Code Section 36-4-3-3.5 states that an annexation ordinance "must contain," among other things, "[a] description of the boundaries of the territory to be annexed, including any public highway or right-of-way." The Ordinance in this case describes the Annexation Territory's boundaries by referring to state property tax parcel identification numbers and public highways. *See, e.g.*, Defendants' Ex. A at 295 ("Beginning at the point of intersection of the southern corporate boundary of the City of Logansport and the township line separating Clinton Township and Washington Township and which also coincides with the southwest corner of parcel #09-17-02-200-037.000-025, Then

turning southward along that township line separating Clinton Township and Washington Township to the point of intersection with the southern right of way line of County Road 400 S ….").[3]

[10] In the judgment's preamble, the trial court stated,

> The remonstrators have argued that the description of the proposed annexed territory was not legally sufficient. To this end, a local surveyor provided a lengthy, detailed analysis of how the city's description was not a sufficient metes and bounds legal description.[4] However, a detailed metes and bounds description is not required. The description must simply be sufficient to identify the area to be annexed. In this instance the city has satisfied the requirements of the current annexation statute.

Appellants' App. at 14-15. Elsewhere in its judgment, the trial court concluded that the Remonstrators' arguments regarding the sufficiency of the description "are allegations of procedural violation that are beyond the subject of Section 13 and thus are outside the scope of judicial review." *Id*. at 30 (citing *Bradley*, 764 N.E.2d at 217-18).

---

[3] The parties' appendices contain copies of numerous exhibits in violation of Appellate Rule 50(F), which states, "Because the Transcript is transmitted to the Court on Appeal pursuant to Rule 12(B), parties should not reproduce any portion of the Transcript in the Appendix." Appellate Rule 2(K) defines "Transcript" as "the transcript or transcripts of all or part of the proceedings in the trial court or Administrative Agency that any party has designated for inclusion in the Record on Appeal *and any exhibits associated therewith*." (Emphasis added.)

[4] Black's Law Dictionary (10th ed. 2014) defines legal description as follows:

> A formal description of real property, including a description of any part subject to an easement or reservation, complete enough that a particular piece of land can be located and identified. • The description can be made by reference to a government survey, metes and bounds, or lot numbers of a recorded plat.

[11]     On appeal, the Remonstrators again argue that the Ordinance was required to contain a metes and bounds legal description of the Annexation Territory. We agree with the trial court that this issue is outside the scope of judicial review. *See Bradley*, 764 N.E.2d at 218 (disagreeing with Court of Appeals' conclusion that remonstrators "could challenge the annexation based on noncompliance with statutes that do not deal specifically with remonstrances": "According to Ind. Code § 36-4-3-13, 'a court *shall* order a proposed annexation to take place if the following requirements are met.' (Emphasis added.) These requirements are contiguity (or specified alternatives to contiguity) plus a fiscal plan that covers enumerated subjects. This language seems plain enough: if the City satisfies Section 13's listed requirements, the court shall order annexation.").[5]

[12]     Notwithstanding, Indiana Code Section 36-4-3-3.5 simply does not say that an ordinance must contain a metes and bound legal description of the territory to be annexed. The legislature knows how to say "legal description" when it wants to. *See, e.g.*, Ind. Code § 36-4-3-2.2 (stating that notice of hearing on ordinance must include a "legal description of the real property proposed to be annexed."). But it did not do so in Section 3.5, and we will not read that requirement into the statute. *See McGee v. McGee*, 998 N.E.2d 270, 271 (Ind. Ct. App. 2013) ("Our court will not read into a statute that which is not the

---

[5] The *Bradley* court acknowledged that "annexing municipalities may commit procedural wrongs so severe that courts must act to protect remonstrators' substantial rights." 764 N.E.2d at 217. The Remonstrators do not specify which, if any, of their substantial rights are affected by the adequacy of the Ordinance's description of the Annexation Territory's boundaries.

manifest intent of the General Assembly. Thus, it is as important to recognize what a statute does not say as it is to recognize what it does say.") (citation omitted). The Remonstrators' argument regarding the sufficiency of the description is essentially an invitation to reweigh evidence and reassess witness credibility, which we may not do. The Remonstrators have failed to establish clear error on this point.

## Section 2 – The trial court did not clearly err in concluding that the City presented sufficient evidence of contiguity.

At the time relevant to our discussion, Indiana Code Section 36-4-3-13(c) read in pertinent part as follows:[6]

> The requirements of this subsection are met if the evidence establishes the following:
>
> > (1) That the territory sought to be annexed is contiguous to the municipality as required by section 1.5 of this chapter,[7] except that at least one-fourth (¼), instead of one-eighth (⅛), of the aggregate external boundaries of the territory sought to be annexed must coincide with the boundaries of the municipality.
> >
> > (2) That the territory sought to be annexed is needed and

---

[6] The statute was amended effective July 1, 2015. We refer to the prior version of the statute throughout.

[7] Prior to July 1, 2015, Indiana Code Section 36-4-3-1.5 read in pertinent part, "For purposes of this chapter, territory sought to be annexed may be considered 'contiguous' only if at least one-eighth (⅛) of the aggregate external boundaries of the territory coincides with the boundaries of the annexing municipality."

can be used by the municipality for its development in the reasonably near future.

[14] Regarding the contiguity requirement, the trial court found that "Logansport's expert, registered land surveyor Randall Miller, presented evidence in support of the contiguity finding contained in the Fiscal Plan based upon direct surveying measurements, prior surveys, historical deed informative and controlling calls, taxation parcel data, and tax classification status as maintained by Cass County" and showed "that the contiguous portion of the Annexation Territory is greater than 25%." Appellants' App. at 19-20. The trial court also found that "Andrew Lanam, a Manager with Reedy Financial Group, testified that he verified that the parcels shown on the Cass County GIS [Geographic Information Survey] as inside the City limits actually are inside the City limits" by examining county treasurer forms "for each of the parcels contiguous to the Annexation Territory." *Id*. at 21. Lanam explained that the forms "indicated whether a property is being assessed -- and whether the taxpayer is paying -- the municipal tax rate for the City of Logansport and is therefore contained within the City corporate limits." *Id*. The trial court found Miller's and Lanam's testimony "to be persuasive" and further found "that at least one-fourth (1/4) of the aggregate external boundaries of the Annexation Territory coincide with the boundaries of the City and that contiguity therefore satisfies the requirement stated in Ind. Code § 36-4-3-13(c)(1)." *Id*.

[15] The Remonstrators argue that the perimeter distance of the Annexation Territory "must be certain in order to calculate the percentage of its contiguity

or coincidence with the City boundary" and that "[b]ecause measurements derived from the GIS system are imprecise, a precise, accurate measurement of the perimeter distance of the annexation area has not been supplied by the City." Appellants' Br. at 26. The Remonstrators' characterization of the measurements as "imprecise" alludes to a GIS website disclaimer, which states,

> The data provided herein may be inaccurate or out of date. Any person or entity who relies on said information for any purpose whatsoever does so solely at their own risk. Neither the county, or [sic] any agency, offices, or [sic] employee of any other information provider warrants the accuracy, reliability, or timeliness of any of the data provided herein. This data is provided 'as is' without warranty of any kind.

Plaintiffs' Ex. 28. Miller was aware of the disclaimer and testified that he did not "identify any inaccuracies in the GIS data that would impact [his] calculation of contiguity[.]" Tr. at 45, 56-57. The Remonstrators offered no evidence that the GIS measurements are actually imprecise, and their additional criticisms of Miller's testimony are merely invitations to reweigh evidence and reassess credibility, which we may not do.[8] They have failed to establish clear error here.

---

[8] For example, the Remonstrators assert that "Miller did not know the measurements of each line segment (Exhibit RR) which separately presume to describe the annexation area, compared to the annexation area contiguity to the corporation line." Appellants' Br. at 26-27. Miller's testimony indicates that he did know those measurements at one time but did not have them with him at the hearing. Tr. at 55.

## Section 3 – The trial court did not clearly err in concluding that the City presented sufficient evidence that the Annexation Territory is needed and can be used for its development in the reasonably near future.

[16]    Under Indiana Code Section 36-4-3-13(c)(2), a municipality must establish "[t]hat the territory sought to be annexed is needed and can be used by the municipality for its development in the reasonably near future." The trial court made the following relevant findings on this issue:

> 17.  The Hoosier Heartland Corridor is a new limited access highway connecting the City of Fort Wayne to the City of Lafayette and Interstate 69 to Interstate 65. The Hoosier Heartland Corridor runs directly through the Annexation Territory. Through two new interchanges located within the Annexation Territory, the Hoosier Heartland Corridor is directly connected to the Logansport Industrial Park. These two interchanges are currently not developed.
>
> 18.  The Mayor of Logansport testified that one of the considerations of the Council in adopting the Annexation Ordinance was the location of the Annexation Territory in relation to the Hoosier Heartland Corridor and the potential for capturing economic development opportunities.…
>
> ….
>
> 20.  The Mayor also testified that the City needs the Annexation Territory in order to proceed with the consolidation of its existing

tax increment financing (TIF) districts.[9]

> 21.  The City currently has three TIF districts:  (1) the already-consolidated East End/Highway 35 TIF district, (2) the Logan's TIF district in the City's downtown area, and (3) the Industrial Park TIF district.  The Industrial Park and its TIF district are separated from the rest of the City by the Annexation Territory.
>
> 22.  The Mayor testified that the City has plans to combine the Industrial Park TIF district with the combined East End/Highway 35 consolidated TIF district to make one consolidated district, but the City cannot consolidate TIF districts that are not connected, and the City cannot create a TIF district outside its corporate limits.  Therefore, the Annexation Territory must be within the City limits in order for Logansport to connect and consolidate the Industrial Park TIF district with one of the City's two other TIF districts.
>
> 23.  The Mayor testified there [is] currently approximately $1.7 million in the Industrial Park TIF district fund.  He also stated that consolidation of the TIF districts would allow TIF funds to flow back and forth throughout the consolidated TIF areas, including the Industrial Park and the Annexation Territory.
>
> 24.  The Annexation Territory is needed and can be used by the City for its development in the reasonably near future.

Appellants' App. at 21-23 (citations to exhibits omitted).  The trial court also made the following conclusion:

_____

[9] Black's Law Dictionary (10th ed. 2014) defines tax-increment financing as "[a] technique used by a municipality to finance commercial developments usu. involving issuing bonds to finance land acquisition and other up-front costs, and then using the additional property taxes generated from the new development to service the debt."

5. The Annexation Territory is needed to consolidate TIF districts, which can be used by the City for the development of the City as a whole, including the Annexation Territory, in the reasonably near future. Logansport has also shown that as a result of the construction of the Hoosier Heartland Corridor, the territory is needed for transportation linkages, to control and promote adjacent development, and to prevent conflicting land uses on its borders.

*Id*. at 30. And in the preamble, the trial court stated,

The completion of the Hoosier Heartland Corridor will significantly increase traffic in this area. As a result of this increase in traffic, it would be difficult to argue that the city would not benefit from annexing this area. The city will be able to control any growth along the corridor and reap the financial benefit of this development. The remonstrators have pointed to the fact that no development has taken place in the area for many years. The completion of this highway will make it almost a foregone conclusion that some development will come to this area. If not, it would be one of the only places in Indiana where growth did not come to a limited access highway.

*Id*. at 15.

[17] The Remonstrators contend that the trial court's conclusion regarding the development of the Hoosier Heartland Corridor is not supported by the evidence, noting that the City's population "has been steadily declining over the last several years" and that "[t]he City introduced no plan for the development of the large tracts of agricultural land which make up the majority of the" Annexation Territory. Appellants' Br. at 28. But this argument disregards the trial court's undisputed finding that economic development and increased

traffic almost certainly will occur along the Corridor. A city with a declining population needs the employment opportunities and other economic benefits that such development brings, and the Remonstrators do not specifically argue that the City cannot use the Annexation Territory for its development in the reasonably near future. The Remonstrators have failed to demonstrate clear error in this regard.[10]

## Section 4 – The trial court did not clearly err in concluding that the City's fiscal plan is adequate.

[18] The City was also obligated to meet the requirements Indiana Code Section 36-4-3-13(d), which states,

> The requirements of this subsection are met if the evidence establishes that the municipality has developed and adopted a written fiscal plan and has established a definite policy, by resolution of the legislative body as set forth in section 3.1 of this chapter. The fiscal plan must show the following:
>
> (1) The cost estimates of planned services to be furnished to the territory to be annexed. The plan must present itemized estimated costs for each municipal department or agency.
>
> (2) The method or methods of financing the planned

---

[10] The Remonstrators cite *Chidester v. City of Hobart*, 631 N.E.2d 908 (Ind. 1994), for the proposition that the sole purpose of an annexation may not be to increase tax revenue, and they argue that "[t]he sole reason for the annexation is to gain control of the Industrial Park TIF account … and to spend that money for an uncertain development … at the eastern edge of the City." Appellants' Br. at 29. Because the annexation has at least one other purpose, namely to facilitate development along the Hoosier Heartland Corridor, we need not address this argument.

services. The plan must explain how specific and detailed expenses will be funded and must indicate the taxes, grants, and other funding to be used.

(3) The plan for the organization and extension of services. The plan must detail the specific services that will be provided and the dates the services will begin.

(4) That planned services of a noncapital nature, including police protection, fire protection, street and road maintenance, and other noncapital services normally provided within the corporate boundaries, will be provided to the annexed territory within one (1) year after the effective date of annexation and that they will be provided in a manner equivalent in standard and scope to those noncapital services provided to areas within the corporate boundaries regardless of similar topography, patterns of land use, and population density.

(5) That services of a capital improvement nature, including street construction, street lighting, sewer facilities, water facilities, and stormwater drainage facilities, will be provided to the annexed territory within three (3) years after the effective date of the annexation in the same manner as those services are provided to areas within the corporate boundaries, regardless of similar topography, patterns of land use, and population density, and in a manner consistent with federal, state, and local laws, procedures, and planning criteria.

Our supreme court has stated that "a trial court hearing a remonstrance is not an examiner conducting an audit of a challenged fiscal plan. Rather, it should focus on whether that plan represents a credible commitment by the

municipality to provide the annexed area with comparable capital and non-capital services." *Bradley*, 764 N.E.2d at 216.

[19]    In this case, the trial court found that the City's fiscal plan "represents a credible commitment to provide comparable capital and non-capital services to the Annexation Territory" and "is sufficiently detailed to explain Logansport's strategies for providing … capital and non-capital services within the time period allotted by law …." Appellants' App. at 25. More specifically, the trial court found as follows:

> 27. Water and sewer services have already been extended to some areas in the Annexation Territory. The Fiscal Plan and the evidence at the hearing are clear that Annexation Territory landowners are not required to connect to utility service and that utility service will not be further extended unless the further extension is requested. Such future extensions will be pursuant to the City's policy for extension of storm sewer service, sewer service, and water services within the corporate limits [as] set forth in Logansport City Code Section[s] 50-92 and -93. That policy is that "the cost of constructing such public works facilities shall be the primary responsibility of the properties receiving the benefit of such facilities.… It is not the policy of the city to provide such public works facilities for any property or at any location at no cost to the properties receiving the benefit from such facilities. Sec. 50-92(b) and [-](c).

> 28. With respect to capital storm sewer projects, the City's policy is that the City does not install storm sewers except under one of the enumerated circumstances described in Defendant's Exhibit I. Mr. [Michael] Shaver [who prepared the policy narrative of the City's fiscal plan] testified that currently, none of those sets of circumstances exist in the annexation territory. As a result, capital storm sewer service will be provided in the same manner

in which such capital service is provided within the City limits. This is also done pursuant to City Code § § 50-92 and [-]93.

29. The City's Ordinance 2013-28 exempting the annexation area from City stormwater fees confirms that the City will manage stormwater in the Annexation Territory.

30. With respect to street lights, Mr. Shaver testified that no landowners have vocalized a desire for street lights in the annexation area. He testified that street lights are only anticipated to be extended as needed when development comes to the area, which is consistent with how the written Fiscal Plan addresses street lights. At the hearing, he further explained that if there were some desire on the part of landowners for street lights that would not be in connection with development, they would be extended pursuant to the City's existing policy described in [City Code § § 50-92 and -93 and Ordinance 92-3].

31. Most of the Remonstrators who testified stated that they did not want to be urbanized.

32. The Fiscal Plan commits within three years of the effective date of annexation to extending services in the same manner in which such capital service is provided within the corporate limits.

*Id.* at 24-25 (citations to exhibits and underlined emphasis omitted).

[20] The trial court also made the following conclusions:

6. This Court concludes, based upon its review of all of the evidence, that Logansport has demonstrated that the Fiscal Plan satisfies all of the requirements of Ind. Code § 36-4-3-13(d). Logansport's Fiscal Plan establishes a definite policy, and was duly adopted by the Council, in compliance with Ind. Code § 36-4-3-3.1. Under subsection (d), non-capital services must be provided in a manner "equivalent in standard and scope"; capital

services, however, must only be supplied "in the same manner." Capital services need not be supplied to the annexation territory at no cost to those requesting such services because the City does not extend such services within the corporate limits at no cost.

7. The standard for determining whether the Fiscal Plan commits to extend capital services to the Annexation Territory in the same manner as those services are extended in the City is *not* what the City agreed to do in prior annexations ten or even twenty years ago. The Court looks to what the City's current policy is with respect to extending capital services and whether the Fiscal Plan is consistent with that policy. The evidence establishes that the City has a codified written policy with respect to extension of sewer, storm sewer, water, street lights, and other capital public works services within the City. This policy is currently being applied in the area annexed [to the south and east of the City] pursuant to Ordinance No. 2013-10. It was also applied to the three properties within the corporate limits when the City extended water and sewer service to the Northern Heights area. The Fiscal Plan specifically cites to the City Code Sections setting forth this policy as governing how capital services will be extended to the Annexation Territory. There is no inconsistency.

*Id*. at 31-33 (citations omitted).

[21] The Remonstrators first contend that the trial court erred in concluding that local law requires landowners to bear the primary responsibility for the cost of extending capital improvement services such as sewer and water mains and

street lights into (or further into) the Annexation Territory. [11] They criticize the trial court's reliance on City Code Sections 50-92 ("General standard of construction of facilities") and 50-93 ("New public works facilities construction policy") and assert that the court should have followed Section 50-95 ("Annexation"), which reads as follows:

> (a) Before annexing contiguous territory into the city, an assessment will be made by the board of public works and safety, Logansport Municipal Utility, planning department and street department determining the adequacy and status of the existing physical amenities referred to as "public works." Prior to annexing territory, the city must determine that it has the capacity to maintain existing public works to the standard in which they were received, and the Logansport Municipal Utility must have the capacity to extend water, sewer and electrical services for present and projected future needs. Costs of extending public works within individual properties or subdivisions will be the responsibility of the property owners or developers.
>
> (b) The city will consider construction and/or replacement of public works into individual properties or subdivisions in annexed territory if petitioned as specified in section 50-94.
>
> (c) The city and/or Logansport Municipal Utility may, at its

---

[11] One of the Remonstrators' proposed findings states in part, "The City did prove the requirements of Indiana Code[] 36-4-3-13(d), proving that it had developed and adopted a written Fiscal Plan containing all of the required information." Appellants' App. at 492. The City argues that this "amounts to invited error," in that the Remonstrators "may not request a trial court to take an action – in this case, by proposing a finding that the requirements of Section 13(d) were met – and later claim that such action is erroneous." Appellees' Br. at 28. We note, however, that the Remonstrators also submitted a proposed finding stating that "[t]he City's fiscal plan is inadequate as a matter of law because it does not provide for the City's extension of water mains and sewer mains, at City expense, into the proposed annexation area." Appellants' App. at 478. Consequently, we address the merits of the Remonstrators' argument.

discretion, agree to participate financially in the construction and/or replacement of some public works into individual properties or subdivisions in the course of annexation negotiations if it determines such participation is warranted and financially feasible in a fiscal plan.

Defendants' Ex. K at 410, 412. Contrary to what the Remonstrators suggest, Section 50-95 is silent on the issue of cost allocation for extending capital improvement services into annexed territory; it deals strictly with allocating costs for connecting landowners to such extensions. Consequently, we are unpersuaded by the Remonstrators' reliance on Section 50-95 and agree with the trial court that Sections 50-92 and 50-93 are controlling here.[12]

[22] On a related note, the Remonstrators argue that the fiscal plan is inadequate because it does not call for capital improvement services to be provided at the same cost as in prior annexations, that is, at no cost to the landowners. Indiana Code Section 36-4-3-13(d) states that capital improvement services must be provided to the annexed territory "in the same manner as those services are provided to areas within the corporate boundaries," not at the same cost as in prior annexations. We agree with the trial court that the City's policy in past annexations is irrelevant and that the City need not provide capital

---

[12] The Remonstrators also reference City Code Section 2-2 ("Annexation procedure"), which states in pertinent part that the utilities superintendent will "supply cost estimates of planned services to be furnished to the territory to be annexed," the utility service board "will supply a fiscal plan describing the methods for financing the planned services," and the city engineer "will report on how to pay for" additional street lights and other infrastructure. Plaintiffs' Ex. 1 at 8. Like Section 50-95, Section 2-2 is silent on the issue of cost allocation for extending capital improvement services; at the very least, it does not specifically require the City to pay the entire cost.

improvement services at no cost to landowners in the Annexation Territory because the City does not do so within its corporate boundaries in accordance with the City Code. *See* Ind. Code § 36-4-3-13(d)(5) (fiscal plan must show that capital improvement services will be provided "in a manner consistent with … local laws").

[23] Finally, the Remonstrators contend that the fiscal plan is inadequate because the estimated cost of providing certain capital improvement services is zero. But that is because those services will be provided on an as-needed or as-requested basis and, pursuant to the City Code, landowners must bear the primary responsibility for their cost.[13] *Cf. Chem. Waste Mgmt. of Ind., LLC v. City of New Haven*, 755 N.E.2d 624, 637 (Ind. Ct. App. 2001) (concluding that city was "not required to provide a cost estimate greater than zero for capital improvements that are not needed in the annexation area," where city had policy of making improvements on "as-needed" basis). In sum, the Remonstrators have failed to establish that the trial court's findings and conclusions regarding the fiscal plan are clearly erroneous.

---

[13] The Remonstrators criticize the fiscal plan for failing "to provide for stormwater drainage facilities as a capital service." Appellants' Br. at 41. Before the annexation, Cass County was responsible for stormwater drains in the Annexation Territory. At the hearing, two of the three members of the County Drainage Board opined that the drains would become the City's responsibility after annexation, but both acknowledged that other options were possible, including the County retaining control. Tr. at 345, 352. And Michael Shaver, who prepared the fiscal plan, expressed his understanding that the County would retain control over stormwater drains. *Id*. at 188. In light of the foregoing, we cannot conclude that the fiscal plan is fatally flawed in this respect.

# Section 5 – The trial court did not clearly err in concluding that the Remonstrators failed to establish that the annexation will have a significant financial impact on residents or landowners.

[24] Indiana Code Section 36-4-3-13(e) reads as follows:

> At the [remonstrance] hearing, the court shall do the following:
>
>> (1) Consider evidence on the conditions listed in subdivision (2).
>>
>> (2) Order a proposed annexation not to take place if the court finds that all of the conditions set forth in clauses (A) through (D) and, if applicable, clause (E) exist in the territory proposed to be annexed:
>>
>>> (A) The following services are adequately furnished by a provider other than the municipality seeking the annexation:
>>>
>>>> (i) Police and fire protection.
>>>>
>>>> (ii) Street and road maintenance.
>>>
>>> (B) The annexation will have a significant financial impact on the residents or owners of land.
>>>
>>> (C) The annexation is not in the best interests of the owners of land in the territory proposed to be annexed as set forth in subsection (f).
>>>
>>> (D) One (1) of the following opposes the annexation:

(i) At least sixty-five percent (65%) of the owners of land in the territory proposed to be annexed.

(ii) The owners of more than seventy-five percent (75%) in assessed valuation of the land in the territory proposed to be annexed.

Evidence of opposition may be expressed by any owner of land in the territory proposed to be annexed.

[25] The trial court found that the parties had stipulated that police, fire protection, street, and road maintenance services are adequately furnished to the Annexation Territory by a provider other than the City. The trial court also made the following relevant findings:

36. Landowners in the Annexation Territory on City water and sewers currently pay a 25% surcharge for service outside of City limits, which will be eliminated for those properties upon annexation. Landowners in the Annexation Territory connected to City electric utilities pay an additional facilities charge for service outside of the City limits, which will also be eliminated for those properties upon annexation.

37. Trash removal service will be available to residential properties in the Annexation Territory after annexation at a savings compared to what those landowners would currently be required to pay for those same services.

38. Logansport offered a financial impact analysis prepared by Reedy Financial Group. The City's witness Andrew Lanam, a Manager with Reedy Financial Group, helped to prepare the report. He testified that the report showed that only one property

in the Annexation Territory (owned by Pasquale Trucking Company, Inc.) is projected to see an annual property tax increase of greater than $1,000 per year and this is a commercial property. No one testified on behalf of this owner regarding whether this impact would be significant.

39. After giving effect to offsets for lower utility bills and free residential trash service, as applicable, 106 parcels in the Annexation Territory are projected to see either no increase in cost or a net reduction in total cost as a result of annexation.

40. After factoring in the cost decreases for utility service and residential trash service, as applicable, only one property in the Annexation Territory (Pasquale Trucking Company) is projected to see an annual net increase of greater than $1,000 as a result of annexation and only one other property is projected to see an annual net increase of greater than $500. One of the joint owners of the latter property (Douglas Weaver) is the only landowner who testified in this case who is projected to experience a net annual increase in property taxes as a result of the annexation.

41. Nearly all of the parcels in the Annexation Territory that are projected to see a net increase as a result of annexation are estimated to see an increase of less than $1 per day.

….

43. The Annexation Ordinance as amended exempts property which is classified for zoning purposes as agricultural from the municipal tax rate for so long as the property remains zoned agricultural pursuant to Ind. Code § 36-4-3-4.1 (the "ag exemption").

….

45. The Remonstrators attempted to show that the annexation would have an adverse financial impact as a result of the

"inevitability" of failure of septic systems and the costs to connect to City sewer service. It was confirmed at the hearing that the City's Fiscal Plan provides that landowners can continue to operate their septic tanks, including repairing or replacing as necessary, so long as the County Health Department will allow the repair or replacement. Sue Norris, a former environmental health specialist for the Cass County Health Department, testified that in her experience the County Health Department does not deny a permit to repair or replace a septic system based upon the availability of a sewer.

….

47. The Court does not find the annexation will have a significant financial impact on the residents or owners of land in the Annexation Territory.

48. Of the landowners who testified, several of them stated they did not want to give up their rural lifestyle.

49. The City has adopted a number of ordinances to enable the property owners in the Annexation Territory to continue their "rural" lifestyle, including: (1) allowing the raising of livestock in the Annexation Territory; (2) allowing the discharge of firearms in the Annexation Territory (subject to restrictions imposed by state law); (3) allowing the use of fertilizers, herbicides, chemicals and/or compounds commonly used for agriculture; and (4) allowing burning of fence rows and other vegetation and grilling food or burning firewood using campfires or outdoor fireplaces.

50. The City has also adopted Ordinance 2013-28, As Amended, to exempt property in the Annexation Territory from storm water rates until a cost of service study is conducted and a new storm water rate ordinance is adopted. That ordinance specifies that property used for agricultural purposes anywhere in the City limits will be assigned a multiple of zero (0) under the stormwater rate structure established in Ordinance No. 2012-18, meaning

that agricultural property does not pay a stormwater rate.[14]

51. The Court does not find that 65% of the property owners or the owners of 75% of the assessed value in the Annexation Territory continued to be opposed to annexation at the hearing.[15]

52. Annexation will not be in the best interests of landowners in the Annexation Territory.

Appellants' App. at 26-29 (citations to exhibits omitted).

[26] The Remonstrators do not challenge any specific findings regarding the annexation's financial impact. They assert that Cass County Deputy Auditor Candy Heath's "spot check of the Remonstrators' property tax increases, as a result of annexation, ranged from 43% to 100%," Appellants' Br. at 43, but this disregards the impact of the ag exemption and the elimination of utility surcharges and fails to actually prove a significant financial impact. The Remonstrators raise concerns about being forced to connect to sewer systems after their septic systems fail, but these were addressed to the trial court's

---

[14] The Remonstrators claim that the City has no authority to enact such an exemption. The City points out that under Indiana Code Section 8-1.5-5-7(e), it may exercise "reasonable discretion" in "adopting different schedules of fees or making classifications in schedules of fees" based on whether "property is used primarily for residential, commercial, or agricultural purposes." The City also notes that "there was no challenge filed to the ordinance granting the stormwater exemption and so it is final." Appellees' Br. at 38 (citing Tr. at 420).

[15] Because the Remonstrators had the burden of proof as to all four relevant subparagraphs of Indiana Code Section 36-4-3-13(e)(2), we need not address their argument that the trial court erred in concluding that they had failed to establish that at least sixty-five percent of the landowners in the Annexation Territory oppose the annexation. We note, however, that each remonstrance petition states that the petitioner agrees that it "shall remain binding and valid throughout the duration of any legal proceedings challenging" the Ordinance. *See, e.g.*, Appellants' App. at 64.

satisfaction. *See* Finding 45. The Remonstrators also claim that "[t]he future cost of extension of water and sewer mains will cost millions of dollars[,]" *id*., but the mains will be extended only on an as-needed or as-requested basis, per the landowners' specific request. *See* Tr. at 172 (testimony of Michael Shaver: "[T[he [fiscal] plan says exactly what the people asked for it to say which was that we won't require them to connect and we won't extend the services unless they request the services."). Once again, the Remonstrators have failed to establish that the trial court's findings and conclusions are clearly erroneous.

# Conclusion

We agree with the trial court that the City met its burden as to subsections (c) and (d) of Indiana Code Section 36-4-3-13 and that the Remonstrators failed to meet their burden as to subsection (e). Therefore, we affirm the trial court's judgment.

Affirmed.

Vaidik, C.J., and Bailey, J., concur.